PARKVIEW GENERAL HOSPITAL, INC.,
Appellant,

v.

Paul G. EPPES, Appellee.

No. 461.

Court of Civil Appeals of Texas.

Corpus Christi.

Oct. 30, 1969.

Rehearing Denied Nov. 26, 1969.

Stone, Luther & Dyer, Hubert Stone, Corpus Christi, for appellant.

Wade & Howard, Virgil Howard, Corpus Christi, for appellee.

## OPINION

NYE, Justice.

This is a suit for architectural fees alleged to be due and owing for work performed in the drawing and preparation of plans and specifications for the construction of certain additions to Parkview General Hospital located in the City of Corpus Christi, Texas. The agreement between the parties was covered by a written contract. The project was never constructed and a dispute arose between the parties as to the amount due and owing under the contract for the work performed by the architect. The written contract sued upon was accompanied by a letter agreement written by the architect making the contract conditional upon getting a satisfactory loan commitment and permission from the City of Corpus Christi to build the project.

The trial of the case was had before a jury which answered numerous special issues and found in effect that the total compensation that would be due the architect based upon the project construction costs would have been the sum of $27,062.-00. This amount would be subject to an offset of $10,980.00 which appellant had previously paid. The jury also found that at least one of the conditions set forth in the letter agreement, had not been met and that such condition had not been waived. The trial court, upon motion of the architect, disregarded these and other certain jury findings and rendered judgment for

the architect for the amount of $18,522.00 which included $2500.00 as reasonable attorney fees.

The appellant built the existing Parkview General Hospital in 1961–1962. The architect did the architectural work on the original hospital and upon a 25-room addition in 1963. In 1965 appellant decided to put on a second addition to the hospital and negotiated with and executed a contract with the architect to do the architectural work for the new addition. The contract was executed by the appellant's administrator only after the architect had delivered a letter setting forth certain conditions. The letter from the architect reads as follows:

"April 15, 1965

Mr. Harold Hartgraves, Administrator
Parkview General Hospital
4626 Weber
Corpus Christi, Texas

Dear Harold:

I will bring an 'Agreement between Owner and Architect' to you tomorrow. This is for two purposes: first and foremost, so that I can borrow some cash on a contract, the second being to officially recognize that I have the job.

I realize there are several hurdles to cross. First, you must obtain the City's permission to build, as usual. Second, you must obtain a committment from Aetna Life, which I understand to be substantially more than we will need for the second addition. Neither of these is a real obstacle, of course, but to protect your interests: *I hereby recognize that if either the city does not grant permission to build, or if you fail to obtain a satisfactory committment, that our 'Agreement between Owner and Architect' shall be null and void.*

Sincerely,

Paul G. Eppes" (Emphasis supplied)

The project was slow in getting started. Even though the contract for architectural

services was executed on April 16, 1965, thirteen months later the architect had only billed the appellant for 15% of the entire fee for work he had completed to that time. In September 1966 a loan commitment was obtained. About this same time application was made to the City Zoning and Planning Commission for a change of zoning. Since the hospital was in a residential area it was necessary for the appellant to seek a change of zoning from residential to AB zoning classification. The Zoning and Planning Commission approved appellant's application as submitted. When the application for zoning came before the City Council upon recommendation of the Zoning and Planning Commission, the application was tabled for further study.

The evidence shows that quite a controversy existed between the City Council and the applicants for the zoning change and building permit. There were a number of objections filed by the general public. After considerable study, the Council decided to grant a special council zoning permit in the form of a special ordinance. This ordinance stated that the applicants would be granted a special permit for the construction of the project, but the permit would be subject to accepting and executing an indemnification agreement between the City of Corpus Christi and the Parkview General Hospital, Inc., which was attached and made a part of the ordinance. The indemnification agreement was designed to protect the City from any and all liability arising out of the building of the project on a sanitary fill which was the location site of the hospital addition. The indemnification agreement was never signed or accepted by the appellant. The evidence shows that sometime between the latter part of October, when the appellant received the indemnification agreement, and the first part of December, notice was given to the architect to discontinue work on the plans. At least from December 2 and thereafter, no additional work was performed by the architect nor were any sums other than $10,980.00 previously paid, remitted to him.

Plaintiff's case was tried on the theory that the architect was entitled to 100% of the total architectural fee. This was based upon 6% of the project construction cost. The architect had billed the owners up and until the dispute arose on the basis of work completed at the rate of 6% of an estimated project cost. This was considerably less than actual project cost permitted under the agreement between the owner and architect. Although it was undisputed that the architect had completed only 69% of the total work, judgment was entered for 100% of the project construction cost, less the amount previously paid, plus attorney fees.

The jury in response to special issues found that the hospital administrator who had executed the various contracts was operating within the scope of his authority as agent of the hospital and did in fact enter into the contract of employment with the architect to draw the plans. The jury further found the amount of the project construction cost, the percentage of architectural work completed, the rate of compensation based on the construction cost. Additionally the jury refused to find (Special Issue #18) that the defendant hospital owners waived the conditions precedent stated by the architect in his letter to the hospital owners. The jury found that the hospital had obtained a satisfactory loan commitment. (One of the stated conditions precedent). However, in Special Issue 22 the jury found that the Parkview General Hospital did not obtain a satisfactory permit from the City of Corpus Christi for the construction of the second addition to Parkview General Hospital (the other condition precedent). The final issue was No. 23: "Do you find from a preponderance of the evidence that there was a waiver by the defendant Parkview General Hospital of the failure to obtain a satisfactory permit from the City of Corpus Christi to erect a second addition to Parkview General Hospital?" The jury answered "No."

The defendants had plead various defenses. Primarily, they contended that the architectural contract was null and void; that the contract was specifically conditioned on certain conditions precedent as agreed by the plaintiff in his letter dated April 15, which was made a part of the contract; and that such conditions, as outlined in the letter had not been met. Although the jury found that appellant had not obtained a satisfactory permit from the City of Corpus Christi for the construction of the hospital and had not waived the conditions precedent, the trial court ignored the jury findings (Special Issues 18, 22 and 23) and granted plaintiff judgment based on a breach of contract and awarded the appellee 100% of the amount that he would have been entitled had the project been fully completed and all work performed. The appellant, in a number of points of error contends that the trial court erred in granting the plaintiff judgment non obstante veredicto and in disregarding the jury's special issues 18–22 and 23 for the reason that the issues were ultimate defensive issues and that there was sufficient evidence to support these jury findings. We agree.

The case was based upon the architect's contract and the letter agreement that made the contract subject to the condition set forth in the architect's letter to the owners. These conditions were: (1) a satisfactory loan commitment and (2) permission from the City to build the project. Ordinarily if the acceptance of a contract is conditioned upon the happening of a future event, the condition must be performed or fulfilled exactly as set forth, before the promise can be enforced. 13 Tex.Jur.2d, Contracts, Sec. 151; 12 Am.Jur., Sec. 296, p. 849. When the defendant's liability on the contract depends on the performance or a happening of a condition precedent, the plaintiff must allege and prove that the condition has happened or been performed or that there was a waiver of the performance of the condition precedent. Where the parties to the proposed contract have agreed that the contract is not to be effective or binding until certain conditions are

performed or occur, no binding contract will arise until the conditions specified have occurred or been performed. 13 Tex.Jur. 2d, Contracts, Sec. 377 and 390 and authorities therein cited; 17 Am.Jur.2d, Sec. 320, et seq. p. 749.

The appellee architect agreed that the appellant executed the contract accompanied with the letter side agreement, setting out the above conditions. The appellee further admitted in his brief that the City Council passed a special ordinance granting a special council permit but also on a condition that appellant sign an indemnification agreement attached and made a part of the ordinance. It is appellee's contention that the condition precedent (permission to build) should not have been modified by the term "satisfactory" (permit to build) as was worded in Special Issue 22 and therefore such issue as was worded was not an ultimate or controlling issue. Appellee contends further that issues 22 and 23 had no evidence to support them, and that the issues are only evidentiary and not ultimate issues. Therefore appellee reasons, the trial court was correct in disregarding the issues and entering judgment for the plaintiff.

■ First of all, the appellee architect made no objection to any special issues submitted by the court. Any objection not made and presented to the court shall be considered waived. Rule 272, Texas Rules of Civil Procedure. Since the architect's contract was conditioned upon the owners obtaining permission from the City to build, we must next consider whether Special Issue 22 which inquired as to whether or not the appellant obtained a *satisfactory* permit from the City for the construction of the addition was a proper ultimate issue. It is undisputed that the parties agreed that the contract would be null and void if the City did not grant permission to build. In order to get the permit to build the project, it was necessary to obtain a rezoning. Since the rezoning was refused, the Council finally granted a conditional permit to build. The evidence, according to the ap-

pellee, was that these new conditions imposed upon the owners by the City, did not amount to any real obstacle. Evidence from the owners however was that this condition set forth in the special council permit, was unacceptable. In this connection Mrs. Connor stated that she took the ordinance and the indemnification agreement to her attorney who advised her that she could not live with that agreement. He instructed her not to sign or accept it. Mrs. Connor testified that she did not accept the conditions and later instructed her administrator to so inform the City.

■ It is undisputed that originally the hospital owners, joined by the architect, went to the City to obtain permission to build the hospital addition. Their request as presented was turned down by the City and a counter proposal was made to them by the City which was ultimately refused by the owners. During the course of the trial as the evidence unfolded, the issue developed whether this special council permit with the indemnification agreement attached was a "satisfactory permission to build" or not. Appellee contended that this new special council permit was an out and out permit to build; that all the appellant had to do was execute the indemnification agreement and meet the other additional requirements set out by the City, and they could then proceed with the project. Appellant contended that this imposed additional requirements not contemplated by the parties and it was an unacceptable permit and therefore was no permit to build at all. By implied consent the parties plaintiff and defendant apparently agreed to submit the issue to the jury as to whether or not a "satisfactory permit" from the City to construct the project had been obtained. This went to the condition agreed to by the parties as outlined in the architect's letter. We hold that this was an ultimate defensive issue unobjected to, and there was ample evidence in the record to uphold the jury's answer to this issue. Rules 274, 279, T.R.C.P. and see McDonald

v. New York Central Mutual Fire Ins. Co., 380 S.W.2d 545 (Tex.Sup.1964).

In connection with special issue 18 the jury refused to find that the defendant hospital owners waived the conditions stated by the architect in his letter, nor was there a finding of waiver (special issue 23) by the defendant hospital owners of their failure to obtain a satisfactory permit from the City of Corpus Christi. The plaintiff's brother, who was also an architect and worked on the architectural plans, testified that it was understood that they (the appellee and his brother) would not consider that they had the job "unless the zoning was good from their (the hospital owners) standpoint." Other evidence in the record was sufficient to support the jury in making these findings. Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.1965). See Calvert, "No Evidence" and "Insufficient Evidence", 38 Tex.Law Rev. 359.

Next the appellee contends that there had been a waiver as a matter of law of any requirement that the City give the hospital owners permission to build. In this regard the appellee contends that the appellant hospital owners made payments on their account after the Council had passed the special council permit and that their attorney had written a letter to the agent for the lending institution which indicated that the project for the construction of the hospital was proceeding along. The evidence, however, was that the ordinance was passed on October 5 and the indemnity agreement was delivered for the first time to Mrs. Connor on October 19. A notation on an invoice dated October 10 "due on September billings", showed that a payment was made by the owner to the architect on October 4 for $500.00. On the bottom of the invoice there was a handwritten note directed to the architect that "Please do not continue until some word from city regarding permit * * * DO NOT CONTINUE ON THIS." Signed "VLC (Mrs Connor)". Although Mrs. Connor said that this notation was instructions to the Hospital Administrator to give to the architect,

Mrs. Connor testified that she heard Dr. Connor call the plaintiff and tell him that he didn't know whether Mrs. Connor wanted to go ahead with the project or not. On the same date, October 19, a check to the architect for $1500.00 had the notation on the check "Fee—Completing work to date." At this same time Mrs. Connor testified she told the appellee personally: "Why go ahead when we knew we would not get a permit from the City?"

A couple of weeks later Mrs. Connor was in a wreck which rendered her incapacitated and unconscious off and on until Christmas. On December 2 the architect wrote Dr. Connor recognizing that the building of the project was being held up. In the same letter he made considerable argument urging her to continue on with the project. There was other testimony, much of which was conflicting, as to whether the project was going to be built or not. In any event, there was ample competent evidence to uphold the jury's negative answers to special issues 18 and 23 concerning waiver by the appellant of the conditions set forth in the letter, and concerning any waiver of hospital owners' failure to obtain a satisfactory permit from the City. Garza v. Alviar, supra.

The record shows that the appellee architect made no attempt to prove that the conditional zoning permit could have been economically accepted by the owners considering the evidence of the burden placed on them by the indemnification agreement. There was no evidence or special issue requested that the appellants were unreasonable in not accepting the conditional permit from the City with the indemnification agreement condition. There was no evidence that the appellant acted in bad faith. In fact the appellee admitted at one point in the evidence that the appellant should not agree to furnish the indemnity bond to the City and admitted further that the special zoning permit was unacceptable as offered. It was undisputed that the appellant could not have begun construction without furnishing the City the indemnification

agreement and without the subsequent approval by the City.

In view of the disposition here made, it is not necessary for us to consider appellant's other points of error. Judgment of the trial court is reversed and rendered that the appellee take nothing. Rule 324, T.R. C.P.

Reversed and rendered.

T. GILBERT SHARPE, Associate Justice (concurring in part and dissenting in part).

I concur in reversal of the judgment below but respectfully dissent to rendition of judgment here that appellee take nothing. In my view the judgment should be reversed on the basis of appellant's point three (which is not mentioned in the majority opinion) and the cause remanded for new trial.

The majority opinion does not set out the three points contained in appellant's original brief which read as follows:

### "APPELLANT'S FIRST POINT

"The Trial Court erred in disregarding the findings of the Jury on Special Issue Number 22, wherein the Jury found that Appellant had not received a satisfactory permit from the City of Corpus Christi for the construction of the Second Addition to Parkview General Hospital, and also in granting judgment for Plaintiff contrary to such jury finding. (Germane to Assignment of Error No. V, Defendant's Amended Motion for New Trial)

### APPELLANT'S SECOND POINT

"The Trial Court erred in granting Appellee judgment for an amount equal to one hundred (100%) percent of the architect's fee due had the work been completed rather than an amount equal to sixty-nine (69%) percent of the work done by Appellee as alleged in his pleading and found by the Jury. (Germane to Assignment of Error Nos. VI and VII,

Defendant's Amended Motion for New Trial)

### APPELLANT'S THIRD POINT

"The Trial Court erred in granting judgment for Appellee and in refusing to grant Appellant a new trial because the Jury considered and based its verdict on evidence that had not been offered or admitted into the trial by the Court. (Germane to Assignment of Error No. X, Defendant's Amended Motion for New Trial)"

The judgment of the trial court sets out, among other things, special issues 18, 22 and 23, the jury answers thereto, and a recitation concerning them reading as follows:

### "SPECIAL ISSUE NO. 18

Do you find from a preponderance of the evidence that there was a waiver by Defendant of the conditions stated by Plaintiff in his letter of April 16, 1965?

(Note: The correct date of appellee's letter is April 15, 1965).

Answer 'Yes,' or 'No'.

WE, THE JURY, ANSWER: NO.

\* \* \* \* \* \*

### SPECIAL ISSUE NO. 22

Do you find from a preponderance of the evidence that the Defendant Parkview General Hospital obtained a satisfactory permit from the City of Corpus Christi for the construction of the second addition to Parkview General Hospital?

Answer 'Yes', or 'No'.

WE, THE JURY, ANSWER: NO.

### SPECIAL ISSUE NO. 23

Do you find from a preponderance of the evidence that there was a waiver by the Defendant of the failure to obtain a satisfactory permit from the City of Corpus Christi to erect the second addi-

tion to Parkview General Hospital, if. you have so found?

Answer 'Yes', or 'No'.

WE, THE JURY, ANSWER: NO.

"Thereafter Plaintiff moved to the Court to disregard the findings of the jury on special issues Nos. 18, 22 and 23 and it appearing to the Court that the findings of the jury to special issues Nos. 18, 22 and 23 have no support in the evidence and that special issue No. 22 is an evidentiary issue and not an issue of ultimate fact and may be, therefore, disregarded by the Court."

I agree with the holdings of the trial court in the respects just mentioned. With reference to special issue 22 the inquiry made therein is whether appellant "obtained a *satisfactory* permit" from the City for the construction of the addition in question. I am unable and unwilling to equate that inquiry with the issue as to whether the City gave "permission to build", which is the condition stated in appellee's letter. In particular, I do not agree that the word "satisfactory" is properly injected into special issue 22, and I would here uphold the trial court rulings that said issues as submitted was both evidentiary only and without support in the evidence. Appellee's letter of April 15, 1965 referred to appellant obtaining a "satisfactory loan commitment", but it did not use the word "satisfactory" in connection with "permission to build" by the City. It is true that a contract may require that certain provisions or performance shall be to the satisfaction of the other party. See Delhi Pipeline Corporation v. Lewis, Inc., 408 S.W.2d 295 (Tex. Civ.App., Corpus Christi, 1966, n. w. h. ). But, as we held in that case (in accord with a number of cases cited therein), the stated rule is operative only where it appears from express terms of the contract or from plain language therein that it was the intention of the parties that the determination of the person to whom the decision is entrusted would be final and conclusive; and such a provision is not to be

implied. The evidence establishes that the City did grant "permission to build" the addition in question. On October 5, 1966 the City Council passed an ordinance amending the zoning ordinance of the City of Corpus Christi, Texas, which granted a special permit for the construction in question, subject to the conditions therein set out. The evidence reflects that the original hospital and all prior additions were constructed under other special permits granted by the City Council. The conditions mentioned in the ordinance of October 5, 1966 could have been easily complied with by appellant. There is no provision in the contract here that a determination of dissatisfaction by appellant's representatives concerning the City's "permission to build" would be final, binding or conclusive, or that appellant's dissatisfaction with "permission to build" would furnish a basis to terminate appellant's contract with appellee architect. The evidence shows that on November 2, 1966, Mrs. V. C. Connor, who appears to have been the driving force behind the project, was seriously injured in an accident which incapacitated her for several weeks thereafter. The first time appellee had any indication that the construction might not proceed was on December 1 or 2, 1966 when Dr. Connor said in substance that he had never wanted to build the addition but would go along with Mr. Hartgraves and Mrs. Connor on the matter. Mrs Connor was still in the hospital and seriously ill at that time. Appellee testified on the trial that he had never been told by Mrs. Connor or anyone else connected with appellant that the project was not going to be built. The trial court properly disregarded the answer to special issue No. 22.

I agree with appellee that the evidence conclusively establishes that appellant had waived the condition concerning "permission to build" contained in appellee's letter of April 15, 1965. Some of this evidence is as follows: On October 29, 1966, four days before Mrs. Connor was injured, appellee and his attorney joined with her in a treasure hunting expedition at or near

Padre Island south of Corpus Christi, Texas. On the evening prior to the search there was a discussion between appellee and Mrs. Connor with reference to appellee borrowing a Scout vehicle from her and of other matters. The parties were then on the friendliest of terms and appellee had not been advised to stop working on the project. On November 7, 1966 Dr. Connor wrote a check to appellee for $1,000.00 as payment on appellee's account. On December 12 1966 the attorneys for appellant wrote a letter to the mortgage broker conerning the project with carbon copy to appellee in which the latter was requested to prepare a plot plan to be attached to one of the written agreements concerning the loan for the improvements. It is apparent from the evidence and the jury findings that appellee's work was largely completed at that time. Appellee has never been given any written termination notice as is required under Article 10 of the basic agreement between the parties; which agreement is on a filled-in printed form of the American Institute of Architects and designated "The Standard Form of Agreement Between Owner and Architect on a percentage of Construction Costs."

The majority opinion in part states:

"In connection with special issue 18 the jury refused to find that the defendant hospital owners waived the conditions stated by the architect in his letter, nor was there a finding of waiver (special issue 23) by the defendant hospital owners of their failure to obtain a satisfactory permit from the City of Corpus Christi."

The jury findings of "no" to each of special issues 18 and 23 do not amount to affirmative findings (in favor of appellant) that the appellant did not waive the matters inquired about. Instead, such answers amount to no more than a *refusal* by the jury to find from a preponderance of the evidence that there was such a waiver in each instance on the part of appellant. C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191, 194 (Tex.Sup.1966).

The original brief of appellant did not contain points of error complaining of the trial court action in disregarding the answers to special issues 18 and 23, nor were they specifically mentioned therein. In appellant's post-submission brief, filed some fourteen days after oral argument, complaint is made for the first time in this Court (in appellant's supplemental points 4 and 5) concerning the action of the trial court in disregarding the answer to special issue No. 23; but again there is no point of error, brief or argument concerning the action of the trial court in disregarding the jury answer to special issue 18. As I view the matter, the action of the trial court in disregarding the answer to special issue 18 has not been complained of by appellant in this Court and there is no proper basis for our consideration of such action. The answer to special issue No. 18 does not amount to an affirmative finding that appellant did not waive the conditions stated by the appellee architect in his letter of April 15, 1965.

When we reach specific consideration of the action of the trial court in disregarding the jury answer to special issue No. 23, it appears, as above stated, that appellant did not complain of that action in its original brief. However, appellant's counsel who filed its original brief withdrew from the case prior to its submission and new counsel for appellant argued the case. At the time of submission appellant had not amended or supplemented its brief. On submission day we granted leave to appellant's present counsel to file a reply brief to that of appellee. Later, appellant filed a post-submission brief complaining for the first time in this Court of the action of the trial court in disregarding the jury's answer to special issue No. 23 because: (1) " * * * said issue was an ultimate issue in the case." (appellant's supplemental point No. 4), and (2) " * * * for the reason that the record contains sufficient evidence to support the Jury's answers." (appellant's supplemental point No. 5).

I would hold first, that appellant's supplemental points 4 and 5 are not properly before us for consideration. We have not granted leave to appellant to assert additional points to those contained in its original brief, nor have we been requested to do so. Secondly, even if such supplemental points may be considered, in my view they are without merit. The discussion hereinabove of special issue No. 22 is also material to special issue No. 23. I am unwilling to hold that appellant's asserted failure to obtain a "satisfactory" permit can be equated with or substituted for "permission to build" the facilities in question in connection with the question of waiver. In addition, I am convinced that there was a waiver by appellant of the conditions set out in appellee's letter of April 15, 1965, as is more fully discussed hereinabove in connection with the action of the trial court in disregarding the answer to special issue No. 22. Appellee's letter of April 15, 1965 must be considered in connection with the basic contract for architect's fees dated April 16, 1965. When this is done, the conclusion is inescapable to me that the parties did not provide for or intend that appellee would be deprived of compensation for his work done under the facts shown to exist here.

In my view, appellant's point No. one should be overruled.

In my view, the trial court could have originally rendered judgment in favor of appellee for an amount additional to that previously paid him by appellant based upon the jury verdict. However, I believe that the trial court should ultimately have granted a new trial for the reasons now to be stated.

Appellant's third point asserts in substance that the trial court erred in refusing to grant it a new trial because the jury considered and based its verdict on evidence that had not been offered or admitted by the court. After the verdict was returned trial counsel for appellant discovered that the complete set of plans relied on by appellee were not offered by either party nor pellee were not offered by either party nor

admitted into evidence by the trial court. The set of plans was identified by the court reporter as plaintiff's exhibits 1–22 inclusive, and consist of 22 separate pages, each of dimensions 28 inches by 17 inches. The exhibits, so marked for identification only, all relate to units A, B, C and D of the proposed addition and may be generally described as follows: Exhibits 1–4, floor framing plans; Exhibits 5–9, roof framing plans, Exhibits 9–14, air conditioning plans; Exhibits 15–18, electrical plans; and Exhibits 19–22, plumbing plans. There was some oral testimony involving Plaintiff's Exhibits 1–22, particularly by appellee's witnesses William Alvin Eppes, consulting engineer and brother of appellee, and Mr. Ben Wagner, a structural consulting engineer. However, there were many facets of these exhibits which were not testified about, and their presence in the jury room undoubtedly furnished much additional evidence and in a different form from other evidence which had been admitted.

On the hearing of its motion for new trial appellant called as a witness Mr. J. E. Zimmerman, one of the jurors who sat in the case. His testimony was in substance that Plaintiff's Exhibits 1–22, being the plans hereinbefore referred to which were not admitted into evidence, were examined by the jurors in detail and were used in connection with answering the special issues. Mr. Zimmerman testified that such exhibits were the only set of plans or set of architectural drawings in the jury room, although there were some other drawings and papers. The juror further said that the plans were used in determining the amount of work done by the architect, and that the plans were examined at length in connection with either the question of percent of completion or cost. No other juror was called as a witness and Mr. Zimmerman's testimony was uncontradicted. The record thus reflects that such exhibits, being the only set of plans drawn by appellee, although identified as Plaintiff's Exhibits 1–22, were not admitted into evidence, but nevertheless found their way into the jury room and were used and con-

sidered by the jurors in reaching their verdict.

It is well settled that a new trial should be granted in a civil case if it appears that the verdict was influenced by the juror's consideration of a document not introduced in evidence. See Triangle Cab Co. v. Taylor, 190 S.W.2d 755 (Tex.Civ.App., El Paso, 1945, affirmed 144 Tex. 568, 192 S.W.2d 143); Jones v. Elliott, 259 S.W.2d 288, 297 (Tex.Civ.App., El Paso, 1953, writ denied with per curiam opinion 153 Tex. 68, 263 S.W.2d 250); 41 Tex.Jur.2d, New Trial, Sec. 50, p. 145; Texas Practice, Evidence, McCormick & Ray, Vol. 2, Sec. 1466, p. 324.

It is conceded by all parties that the set of plans marked Plaintiff's Exhibits 1–22 should not have been sent to the jury room or considered by the jurors. It is further apparent that these exhibits were highly material in connection with several of the special issues submitted to the jury. This is particularly true as to the questions of percentage of completion of appellee's work and the cost of construction.

In my view, probable injury to appellant, which is a question of law, has been established. The additional information furnished to the jury by the exhibits which were not admitted into evidence probably caused the jurors to answer the issues, particularly numbers 4 (construction cost of $430,218.00); 5 (percentage of completion of architectural work, 85%); and 19 (reasonable value of architectural services, $18,-762.40), in amounts greater than it would otherwise find without them. In any event such exhibits greatly buttressed the other evidence offered by appellee and probably caused the rendition of an improper judgment. Rule 434, T.R.C.P.

For the reasons stated, I would sustain appellant's point number three and reverse and remand the case for new trial. I, accordingly, respectfully dissent to rendition of judgment here in favor of appellant.