A: Yes.

**LIFE INSURANCE COMPANY OF THE SOUTHWEST, Appellant,**

v.

**VEREX ASSURANCE, INC., Appellee.**

**No. 05–90–00673–CV.**

Court of Appeals of Texas, Dallas.

March 26, 1991.

John J. Irvin, Dallas, for appellant.

William L. Kirkman, Fort Worth, for appellee.

Before ROWE, LAGARDE and OVARD, JJ.

## OPINION

ROWE, Justice.

This appeal arises from a suit by Life Insurance Company of the Southwest (Southwest) against Verex Assurance, Inc. (Verex) seeking recovery under a mortgage guaranty insurance policy issued by Verex to cover a mortgage loan on which Southwest was the insured. After default on the loan, Southwest sued Verex for recovery under the policy. Verex refused to pay the claim, contending that the policy did not cover the type of loan in question and that Verex was misled into insuring the loan. Both sides moved for summary judgment based on stipulated facts, affidavits, and deposition testimony. The trial court granted summary judgment for Verex. Southwest appeals.

In a single point of error, Southwest urges that the trial court erred in granting Verex's motion for summary judgment because Verex was not entitled to summary judgment as a matter of law on its affirmative defenses of fraudulent misrepresentation and failure of conditions precedent to the effectuation of the insurance policy. We find that the trial court properly granted summary judgment based on the affirmative defense that conditions precedent to the effectuation of the policy were not met. We overrule appellant's point of error and affirm the summary judgment.

Summary judgment is proper if the summary judgment record shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* TEX.R.CIV.P. 166a(c). In reviewing the propriety of a summary judgment, we are bound by these standards: (1) the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant, and any doubts

must be resolved in its favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

The summary judgment evidence in this case showed the following: In late 1983, Berg–Sutton, a home builder, acquired property at 506 Whipporwill, Missouri City, Texas, in trade from Calvin Manuel. Manuel traded the property on Whipporwill to Berg–Sutton in exchange for a new home built by Berg–Sutton. At the time of exchange, there was an outstanding and assumable loan of $39,557.02 from University Savings on the property. Berg–Sutton assumed the loan when it acquired the property.

Berg–Sutton then refinanced the property with Texas Western, a local mortgage company. Berg–Sutton's purpose for refinancing the property was to convert to cash its newly acquired equity in the property. The amount of the loan sought was $63,900. The loan to be paid off was $39,577.02. Berg–Sutton was to collect the difference.

In connection with Berg–Sutton's refinancing of the loan, the loan processor at Texas Western put together a loan file— that is, she ordered credit reports, deposit verifications, mortgage verifications, requested tax returns, a current profit and loss statement, and a balance sheet on Berg–Sutton. After the loan file was put together, Texas Western applied to Verex for insurance on the loan. At that time, Texas Western held a master policy from Verex which entitled Texas Western to apply for coverage on individual loans. In applying for insurance, Texas Western sent Verex a copy of the loan file which had been prepared. The loan file showed that the loan was a new loan made to purchase the property on Whipporwill as opposed to a refinance of an existing loan.

The loan file generated by Texas Western and sent to Verex specifically showed that: (1) the purpose of the loan was for purchase and not to refinance; (2) the estimated cash required to be paid by the borrowers at closing was $11,600; and (3) the source of the buyer's down payment

was to be its bank funds. The "Details of Purchase" section, which was not to be completed if the loan was for refinancing, stated that the purchase price was $71,000. Verex reviewed the loan file to decide whether to insure the mortgage. Based on Verex's review of the loan file, Verex understood that it was being asked to insure a new purchase money loan with a loan to value ratio of ninety percent. Relying strictly on the information contained in the loan file, Verex issued a commitment of insurance and a certificate of insurance to Texas Western.

The refinance closed in December of 1983. Berg–Sutton did not make any down payment on the property prior to or at the time of refinancing. After the closing, Texas Western sold the loan to Southwest. The mortgage insurance policy issued by Verex to Texas Western was assigned by Texas Western to Southwest. Subsequently, Berg–Sutton defaulted, and Southwest filed a claim with Verex. As part of Verex's handling of the claim, the closing documents were requested. Upon receipt of the settlement statement, Verex realized that the deal was different from that which had been represented to it and that consequently the contract it had issued did not cover Southwest's loss. Due to the misrepresentation, Verex sent a letter to Texas Western rescinding the mortgage insurance policy. Along with the letter, Verex included a check to refund all premiums that had been paid for the mortgage insurance policy.

 If parties to a contract have agreed that it is not to be effective or binding until certain conditions are performed or occur, then no binding contract will arise until the conditions specified have been performed or have occurred. *Parkview Gen. Hosp., Inc. v. Eppes*, 447 S.W.2d 487, 490 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n.r.e.). In the present case, the parties agree that the contract at issue is composed of both the commitment for insurance and the certificate of insurance. The commitment for insurance specifically states that the commitment is issued "under the following terms and conditions."

The terms and conditions of the policy were that a sale of property take place, the sales price of the property be $71,000, there be a new purchase money loan of $63,900, and there be a loan to value ratio of ninety percent. These preconditions were not met.

On the commitment for insurance the sum of $71,000 is listed as the "Sales Price." We read this listing as referring to the cash received by the seller upon transfer of the property to the buyer. *See Halsted v. Globe Indem. Co.*, 258 N.Y. 176, 179 N.E. 376, 377 (1932) ("sale" defined as a transfer of property from one person to another, in consideration of a sum of money, as opposed to barters, exchanges, or gifts); *Stahl Petroleum Co. v. Phillips Petroleum Co.*, 550 S.W.2d 360, 366 (Tex. App.—Amarillo 1977), *aff'd*, 569 S.W.2d 480 (Tex.1978) ("price" means amount of money received in exchange for something). This precondition is not met. No cash changed hands. The borrower, Berg–Sutton, acquired the property through an exchange in kind, which in the context presented cannot be considered as a sale. Also, the commitment for insurance requires as a precondition that there be a loan to value ratio of ninety percent. This ratio is not present. The ratio required is stipulated as being the loan amount divided by the lesser of the sales price or the appraised value. Under this formula the applicable ratio would be nil because, although both a sales price and an appraised value were listed at a $71,000 figure, the "sales price" figure was actually a zero in that no sale took place. Thus, no valid loan to value ratio existed. Lastly, on the certificate of insurance the sum of $63,900 is listed as the "Initial Insured Loan Amount." We read this listing as referring to a new loan to cover the purchase of the property described in the commitment for insurance. The refinance transaction does not satisfy this precondition.

Because these conditions to the effectuation of the policy were not met, Southwest was not insured for default on the refinance concerning the Whipporwill property. Finding no coverage on the disputed claim, we overrule appellant's point of error. By

holding that summary judgment was properly based on the affirmative defense that conditions to the effectuation of the contract were not met, we find it unnecessary to address the affirmative defense of fraudulent misrepresentation.

The trial court's judgment is affirmed.