Town Bank, a Wisconsin Banking Corporation,
Plaintiff-Appellant,

v.

City Real Estate Development, LLC,
Defendant-Respondent.†

Court of Appeals

*No. 2008AP1845. Submitted on briefs May 19, 2009.
—Decided October 28, 2009.*

2009 WI App 160

(Also reported in 777 N.W.2d 98.)

† Petition to Review granted 3/9/10.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Paul R. Erickson* and *Kari H. Race* of *Gutglass, Erickson, Bonville & Larson, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Thad W. Jelinske, Jennifer S. Walther*, and *Michael J. Anderson* of *Mawicke & Goisman, S.C.*, Milwaukee.

Before Neubauer, P.J., Anderson and Brennan, JJ.

¶ 1. ANDERSON, J. Town Bank, A Wisconsin Banking Corporation, filed a complaint for declaratory

relief against City Real Estate Development, LLC (CRED) asking the trial court to grant declaratory relief and find that the parties entered into a stand-alone $2.5 million loan and that Town Bank fully performed its obligations under that loan. Town Bank moved the trial court to grant summary judgment on its complaint and for dismissal of CRED's counterclaims on the grounds that the only loan obligations Town Bank had were under a Term Credit Agreement (TCA) and an incorporated $2.5 million note and that Town Bank fully performed those obligations. CRED contended that Town Bank was also obligated to provide an additional $6.5 million loan under a prior loan commitment and the TCA. Town Bank responded that the TCA's integration clause and the parole evidence rule precluded consideration of any prior agreement in construing the TCA. The trial court denied Town Bank's motion finding that the TCA was ambiguous as to whether it was a stand-alone transaction. The case was tried to the jury, and the judgment was entered, ordering that CRED recover from Town Bank the sum of $600,000, as claimed delay damages arising from Town Bank's failure to provide the additional loan amount of $6.5 million, plus statutory fees and costs in the amount of $20,359.48.

¶ 2. Town Bank appeals, asking the court to reverse the judgment and remand this case to the trial court with instructions to enter judgment granting the declaratory relief sought by Town Bank and dismissing the counterclaims. Upon review, we hold that the TCA was an unambiguous stand-alone agreement between the parties and the only agreement under which Town Bank had loan obligations to CRED. Therefore, we conclude that the trial court erred in denying Town Bank summary judgment.

¶ 3. In early 2004, a member of CRED, David Leszcyzinski, approached Town Bank for financing for a condominium project entailing the acquisition and renovation of a Milwaukee office building known as the Wisconsin Tower. On April 13, 2004, Town Bank issued a letter outlining the construction financing that the parties had been negotiating. Such letter indicated that it was subject to final approval of all terms, conditions, and covenants from the Town Bank loan committee and participant bank. On May 27, 2004, Town Bank made revisions to the April letter and drafted the commitment letter at issue (Commitment), which indicated that the letter dated April 13, 2004, was superseded. The Commitment outlined a credit facility in the total amount of $9 million. Under the Commitment, Town Bank was to provide CRED with a financing commitment in two phases: $2.5 million initial funding for acquisition of the building and completion of demolition, engineering, asbestos removal and marketing; and $6.5 million additional funding for the construction of condominium units as presales dictate. The Commitment had conditions upon which closing of the loan at issue was contingent. The Commitment included the following terms and conditions among others:

I. Credit Facility

$9,000,000 Construction Line

A) $2,500,000 initial funding for acquisition of building and completion of demolition, engineering, asbestos removal and marketing.

B) $6,500,000 additional funding for the construction of condominium units as pre-sales dictate. Bank financing will be based on 75% of the pre-sold units.

. . . .

VI. Collateral

> 1st R/E mortgage on Subject Property—606 West Wisconsin Avenue
>
> 1st Lien Security Agreement on Fixtures and Other Assets
>
> Assignment of Rents and Leases and Developer's Contracts

. . . .

VIII. Additional Terms & Conditions

Closing of this loan is contingent upon but not limited to the following:

> A. Subject to satisfactory review of appraisal, title commitment, Environmental report, construction plans, and final review of loan documents by the Bank's legal counsel.
>
> B. Borrower agrees to contribute $900,000 in up front equity capital prior to closing.
>
> C. Borrower agrees to pay closing costs, including title, filing and documentation.
>
> D. Borrower and guarantors agree to provide annual personal financial statements and tax returns.

. . . .

In order to be effective in any regard, this letter must be properly executed and returned to the Bank by June 11, 2004. This commitment may be terminated at the sole option of Town Bank if the credit agreement is not executed by June 25, 2004.

¶ 4. During June and July 2004, Leszcyzinski represented to Town Bank the progress on the Wisconsin Tower project. In particular, it was presented to Town Bank that Ruth's Chris Steak House, a major

212

commercial tenant, would not sign a letter of intent until CRED owned the building and that CRED's option to buy the Wisconsin Tower was about to expire. In July 2004, Town Bank issued a $2.5 million loan pursuant to the TCA and a Business Note (Note) dated July 15, 2004, and the TCA was signed by two members of CRED. Town Bank claims that the TCA was issued to enable CRED to purchase the property and close the deal with Ruth's Chris. Among other terms and conditions, the TCA included the following:

**1. Term Loan.** (Check (a) or (b): only one shall apply)

. . . .

(b) **Multiple Notes; Multiple Advances.** ☒If checked here, and in consideration of extensions of credit from Lender to Customer from time to time, Lender and Customer agree that section 4 through 19 of this Agreement shall apply to each such extension of credit unless evidenced by a document which states it is not subject to this Agreement. The term "Loan" includes all such extensions of credit. The term "Note" includes each promissory note evidencing Customer's obligation to repay an extension of Credit. This Agreement does not constitute a commitment by Lender to make such extensions of credit to Customer.

. . . .

**14. Entire Agreement.** This Agreement, including the Exhibits attached or referring to it, the Note and the Security Documents, are intended by Customer and Lender as a final expression of their agreement and as a complete and exclusive statement of its terms, there being no conditions to the full effectiveness of their agreement except as set forth in this Agreement, the Note and the Security Documents.

The Note included the following clause among others:

**9. Interpretation.** This Note is intended by Maker and Lender as a final expression of this Note and as a complete and exclusive statement of its terms, there being no conditions to the enforceability of this Note. This Note may not be supplemented or modified except in writing. This note benefits Lender, its successors and assigns, and binds Maker and Maker's heirs, personal representatives, successors and assigns. The validity, construction and enforcement of this Note are governed by the internal laws of Wisconsin. Invalidity or unenforceability of any provision of this Note shall not affect the validity or enforceability of any other provisions of this Note.

¶ 5. Town Bank and CRED continued their negotiations regarding the construction financing after the July $2.5 million acquisition loan was completed. On November 19, 2004, and on December 28, 2004, Town Bank sent CRED letters informing that Town Bank was no longer willing to proceed with the loan agreement proposed in the Commitment. On December 23, 2005, counsel for CRED sent a letter to Town Bank stating that CRED would file a complaint if CRED did not receive a substantial settlement proposal with respect to additional funds to be provided under the Commitment. In response thereto, Town Bank filed an action for declaratory judgment, asking the court to find that the parties had entered into a stand-alone $2.5 million short-term loan agreement, and that Town Bank had fully performed its obligations under that loan agreement. CRED filed an answer and counterclaims arguing, inter alia, that Town Bank breached an agreement to finance an additional $6.5 million of construction financing under the Commitment and that Town Bank's failure to perform caused CRED delay damages.

¶ 6. Town Bank initially filed a motion for summary judgment on October 13, 2006, claiming that any

and all loan obligations with regard to CRED were set forth in the TCA and such obligations were fully performed by the bank when it issued the Note. The trial court denied the motion, noting that the matter might be ripe for summary judgment at a later date after additional discovery. Town Bank filed another motion for summary judgment on October 19, 2007. However, the trial court again denied the motion, finding that the TCA was ambiguous as to whether it was a stand-alone agreement. It ordered the case to proceed to a jury trial.

¶ 7. Town Bank argues that its motion for summary judgment was erroneously denied because the TCA is unambiguous and constitutes the only and entire agreement between the parties. CRED claims that the TCA is not the sole agreement between the parties and that the trial court properly denied a motion for summary judgment because there are disputed issues of fact as to whether the Commitment is part of the terms of the agreement set forth in the TCA. With respect to the Commitment, Town Bank argues that the parol evidence rule bars the introduction of the Commitment to construe the terms of the TCA. Town Bank further argues that even if the terms of the Commitment are admissible, it had no obligation under the Commitment because CRED failed to meet the conditions therein, thereby repudiating the agreement.

██

¶ 8. We review a motion for summary judgment de novo, applying the same standard as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2) (2007–08).[1]

¶ 9. In its motion for summary judgment, Town Bank asked the trial court to interpret the written contract between the parties. "[T]he cornerstone of contract construction is to ascertain the true intentions of the parties as expressed by the contractual language." *State ex rel. Journal/Sentinel, Inc. v. Pleva*, 155 Wis. 2d 704, 711, 456 N.W.2d 359 (1990). When the intent of the parties can be established with "reasonable certainty from the face of the contract itself, there is no need to resort to extrinsic evidence." *Eden Stone Co., Inc. v. Oakfield Stone Co., Inc.*, 166 Wis. 2d 105, 116, 479 N.W.2d 557 (Ct. App. 1991).

¶ 10. In the present case, CRED appeals to the doctrine of partial integration, claiming that the TCA is only a partial integration and, thus, the Commitment should be examined in conjunction with the TCA to determine the parties' intent. CRED claims that the Commitment itself establishes that the parties intended a two-part credit facility in the total amount of $9 million and that the Note attached to the TCA is for the exact amount of $2.5 million, which is the amount identified in the Commitment as the initial funding. CRED also argues that Town Bank's internal document shows that Town Bank affirmed the existence of the Commitment and the two-phase nature of the loan. In effect, CRED contends that the TCA is the "vehicle," or credit agreement, through which the second phase of the parties' intended additional loan of $6.5 million was

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

216

to be made and that extrinsic evidence should be considered when construing the TCA to establish the same. We do not consider CRED's argument to be persuasive.

¶ 11. In ascertaining the intent of the parties, a court must adhere to the plain meaning of the contract if a contract is unambiguous. *Hortman v. Otis Erecting Co., Inc.*, 108 Wis. 2d 456, 461, 322 N.W.2d 482 (Ct. App. 1982). The doctrine of partial integration allows parol evidence to show whether the parties intended to assent to the writing as the final and complete or partial statement of their agreement. *Dairyland Equip. Leasing, Inc. v. Bohen*, 94 Wis. 2d 600, 607–08, 288 N.W.2d 852 (1980). However, it is important to note that the TCA has an integration clause, which states in relevant part that "[t]his Agreement . . . [is] intended by Customer and Lender as a final expression of their agreement and as a complete and exclusive statement of its terms . . . ." Neither party challenged the integration clause as ambiguous. It is a well-established rule that an integration clause, in conjunction with the parol evidence rule, bars the introduction of extrinsic evidence to vary or contradict the terms of a writing. *Dairyland Equip. Leasing, Inc.*, 94 Wis. 2d at 608. The parol evidence rule is substantive law that bars evidence of any prior written or oral agreement from varying or contradicting the terms of the writing when the parties intend the written agreement to be the final expression of their agreements. *Federal Deposit Ins. Corp. v. First Mortgage Investors*, 76 Wis. 2d 151, 156, 250 N.W.2d 362 (1977). As CRED argues on appeal, "[t]he real question when a party invokes the parol evidence rule is whether the parties intended the written agreement to be final and complete or 'integrated' or

whether they intended any prior agreements to be part of their total agreement." *See id.* at 157.

¶ 12. CRED relies on *Federal Deposit Insurance Corp.* in support of its argument that the Commitment should be introduced because the TCA is a partial integration. However, CRED overlooks the factual difference between *Federal Deposit Insurance Corp.* and the present case. The factual background of *Federal Deposit Insurance Corp.* involved a note that lacked a term that is generally found in a negotiable instrument. *Id.* at 163. In the TCA, however, there is no term left open to further explanation, which would thereby make an agreement incomplete on its face. More importantly, the integration clause in the TCA represents that the agreement encompasses the entire agreement of the parties and, thus, it bars the introduction of any prior agreement to vary the terms of the TCA. Therefore, we conclude that the doctrine of partial integration cannot be applied in the present case to overcome the parol evidence rule because the TCA contains an integration clause, which expressly excludes understandings or agreements that are not contained in the TCA.

¶ 13. In denying Town Bank's motion for summary judgment, the trial court noted the fact that Town Bank checked the "Multiple Notes; Multiple Advances" box. However, we find that the language contained under the clause at issue, which provides in relevant part that "[t]his Agreement does not constitute a commitment by Lender to make such extensions of credit to Customer," is unambiguous and does not create an issue of fact. Therefore, the unambiguous language of the agreement, considered in conjunction with its integration clause, makes the TCA a stand-alone agreement,

which is a final, complete and conclusive expression of the parties' intent.

¶ 14. Having concluded that the TCA is an unambiguous stand-alone agreement, we now turn to the Commitment and, specifically, whether it commits Town Bank to provide an additional $6.5 million loan. Town Bank argues that CRED repudiated the Commitment when it failed to meet the terms and conditions thereof and, thus, Town Bank had no loan obligations under the Commitment. There are three conditions that Town Bank claims CRED had failed to meet. These conditions required that: (1) Town Bank receive a "1st R/E mortgage on Subject Property—606 West Wisconsin Avenue" as collateral; (2) CRED execute a credit agreement by June 25, 2004; and (3) CRED contribute $900,000 in up-front equity.

¶ 15. First, there is no evidence in the record that the mortgage requirement has been satisfied. Second, with respect to the issue of timely execution of a credit agreement, CRED argues that it did not fail to meet this condition because time was not of the essence. However, the Commitment clearly stated that the agreement "may be terminated at the sole option of Town Bank if the credit agreement is not executed by June 25, 2004." Nevertheless, CRED argues that Town Bank waived nonperformance when Town Bank issued the TCA, which CRED claims to be the first phase of the two-phase loan. We do not agree. Rather, as discussed above, the TCA is a stand-alone, separate loan agreement; Town Bank issued the $2.5 million loan pursuant to the TCA and the attached and incorporated Note. The TCA, by its terms, provided for a $2.5 million loan and, contrary to CRED's argument, nothing in that document waives CRED's obligation under the Commitment.

¶ 16. The third condition at issue concerns the up-front equity payment in the amount of $900,000. CRED claims that the meaning of "up-front equity" presents a genuine issue of material fact because there can be multiple meanings allotted to the term "equity." In support of its argument, CRED relies on the testimony of Ron Bero, Sr., CRED's banking witness. However, we do not find any evidence from the record that CRED had contributed $900,000 under any definition Bero provided. CRED alternatively argues that the fact that Town Bank proceeded to close the $2.5 million loan evinces that the condition was, in fact, performed to its satisfaction. CRED also argues that Town Bank waived this condition when the $2.5 million loan was closed. Again, CRED's basis for such claim fails as we have concluded that the TCA was a stand-alone agreement.[2]

¶ 17. The up-front equity capital requirement was among the terms and conditions the closing of the Commitment is stated to be contingent upon. Under general contract law, "a condition precedent must be 'exactly fulfilled or no liability can arise on the promise which such condition qualifies.' " *Woodland Realty, Inc. v. Winzenried*, 82 Wis. 2d 218, 224, 262 N.W.2d 106 (1978) (citation omitted). "Where the parties to the proposed contract have agreed that the contract is not to be effective or binding until certain conditions are performed or occur, no binding contract will arise until the conditions specified have occurred or been performed." *Kocinski v. Home Ins. Co.*, 147 Wis. 2d 728,

---

[2] CRED makes other arguments that we do not address. When the resolution of one or more issues resolves the appeal, we need not address additional issues presented. *See Barber v. Weber*, 2006 WI App 88, ¶ 19, 292 Wis. 2d 426, 715 N.W.2d 683.

739, 433 N.W.2d 654 (1988) (quoting *Parkview Gen. Hosp., Inc. v. Eppes*, 447 S.W.2d 487, 490–91 (Tex. Civ. App. 1969)). In view of the law and the record of the present case, we conclude that the Commitment was repudiated as CRED failed to meet the terms and conditions the agreement was contingent upon and, thus, Town Bank did not have any further obligations under the Commitment.

¶ 18. Given that the Commitment was repudiated by CRED and that the TCA was unambiguous and a stand-alone agreement between the parties, the trial court erred in denying Town Bank's motion for summary judgment. We reverse and remand with instructions that the trial court enter judgment for Town Bank.

*By the Court.*—Judgment reversed and cause remanded with directions.