## EARLY–FOSTER CO. v. A. P. MOORE'S SONS, Inc. (No. 2415.)

(Court of Civil Appeals of Texas. Texarkana. April 7, 1921.)

**1. Corporations ⬅503(2)—Making of contract is "part of cause of action" for breach within statute authorizing suit in county where cause arose.**

Within Rev. St. art. 1830, § 24, authorizing suit against a corporation in any county in which the cause of action or a part thereof arose, the cause of action for a breach of contract consists of the contract and its breach, and the requirement that part of the cause of action must have arisen in the county where the suit is brought is satisfied by proof that the contract was made in that county.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Cause of Action.]

**2. Corporations ⬅503(2)—Contract is made where acceptance of offer is given.**

The contract is made at the place where the acceptance of the offer is given.

**3. Corporations ⬅503(2)—Evidence, on plea of privilege of corporation to be sued in another county, held to show contract sued on was made by seller's acceptance of buyer's counter offer.**

In an action for breach of contract brought in the county where the seller was located, evidence, on a plea of privilege to be sued in another county, as to conversations over the telephone between the seller corporation and the buyer corporation, which was then in another county, held to show that the contract was consummated by the seller's acceptance of a counter proposition made by the buyer after rejecting the seller's offer.

**4. Contracts ⬅24—Acceptance must not vary offer.**

A contract is complete only when both parties have agreed to the same propositions, which is accomplished when one party submits a proposition accepted by the other in every respect.

**5. Venue ⬅7—Acceptance of contract over telephone is given in acceptor's county.**

An acceptance of an offer communicated over the telephone by the acceptor in one county to the offerer in another county is given in the county in which the acceptor was, so that, for purpose of venue, the contract was made in that county.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Suit by A. P. Moore's Sons, Incorporated, against Early-Foster Company. From a judgment denying defendant's plea of privilege to be sued in another county, defendant appeals. Affirmed.

The appellee, a private corporation, sued the appellant, a private corporation, in the district court of Smith county, for damages for the breach of an alleged contract of purchase and sale of a car of sugar. The principal office and domicile of appellee is at Tyler, in Smith county, and the principal office and domicile of appellant is, and at all times has been, in Waco, in McLennan county. Appellee alleged that, at the special instance and request of the appellant, the appellee contracted, sold, and delivered to appellant 500 bags of sugar, weighing 100 pounds each, at 24½ cents per pound, and for which the appellant obligated itself and promised to pay appellee at Tyler, Smith county, Tex., for said amount of sugar, the aggregate sum of $12,250.00. It is then further alleged—

"that after the contract of sale for the sugar defendant ordered and instructed plaintiff to ship said sugar to Polish Co-operative Grocery Company at Detroit, Mich., and to draw sight draft on said Polish Co-operative Grocery Company for the amount of said sugar; and acting under said instructions, and for the accommodation of defendant and its request, plaintiff delivered to the International & Great Northern Railway Company at Tyler, Smith county, Tex., to be carried and transported as designated by the defendant and in compliance with its instructions. Plaintiff alleges that the sugar on arrival at Detroit, Mich., was refused by the Polish Co-operative Grocery Company and by the defendant, and the plaintiff was notified of such refusal, and the plaintiff notified the defendant of such refusal, and requested the defendant to pay for such sugar and to make disposition of the same as it saw proper, and the defendant refused to accept said sugar, and refused to pay for same, although often requested to do so, and although the same amount has long since been due."

Appellant filed a plea of privilege, in proper form, to be sued in McLennan county. The appellee filed a controverting affidavit, maintaining that the suit was properly brought in the district court of Smith county because (1) the suit is against a private corporation in which the cause of action, or a part thereof, forming the basis of the suit arose in Smith county, and the same is therefore within the provisions of section 24 of article 1830, R. S. The court, after hearing the proof, overruled the plea of privilege, and the appeal is from that order.

The evidence in behalf of appellee, in support of the contest of the defendant's plea of privilege, is as follows:

"My name is H. L. Cambron and I live here in Tyler. I am treasurer of the A. P. Moore's Sons, Incorporated, which concern is a corporation.

"Yes; on July 5, 1920, I had a conversation over the telephone, one or more, with W. M. Foster of the Early-Foster Company of Waco; at least he was recommended as Mr. Foster of the Early-Foster Company of Waco. My recollection is that that first conversation oc-

curred when Mr. Foster called us first about 1 o'clock in the afternoon, some time in the early part of the afternoon, at which time I was at my home. I was not at the office at that time because it was a holiday with us, for the reason that the Fourth of July was on Sunday and we closed on the 5th.

"As near as I can remember the substance of the conversation that took place in that telephone call between Mr. Foster and myself, as I remember, Mr. Foster called up and probably asked me about these four cars that had already been shipped, and if we had returns on them; and in the course of our conversation it came up about the price of sugar. He asked me what sugar was worth, and I told him that we were selling sugar to the retail trade at 27½ cents, whatever we might have been getting at that particular time, but that we were not buying any sugar, and for that reason I really did not know just what it was worth. I told him that we had sold our contracts down to where we had about 1,120 bags left. The contract about which I was talking to him, as far as our own purchases were concerned, was with the Imperial Sugar Company. So Mr. Foster asked me if we had any rolling cars, as I remember, the way we got started about sugar, and I told him that we had not. He said he would like to have a couple of 500-bag cars of rolling sugar, and I told him that we had no sugar rolling, and that the only thing we had for immediate shipment was a 360-bag car which was being loaded in Sugarland that day, which was the recommendation that the Sugarland people gave me about the loading of the car that we had ordered for our Tyler stock; so I explained to Mr. Foster that I could sell him that car of sugar, consisting of 360 bags, for immediate shipment, but he explained that he wanted 500-bag cars. I told him that it was barely possible that I could get the Sugarland people to load a 500-bag car of sugar immediately, provided they could get an empty car, but that I did not know what to do till I took the matter up with them; and then the question arose about price, and, in view of the fact that we had this sugar bought on a certain kind of arrangement, I asked him right away where he wanted to sell it, so that I would know how to quote him, and he said 'Chicago,' and asked me what we would take for a car, and my recollection is that I asked him 25 cents f. o. b. Chicago. He said that was too high, that he could not make any money at that price; and then I, rather to feel him out, to see what he might be willing to pay for the sugar, I likely suggested, to find out what he would be willing to pay, and his counter offer was 24½ cents f. o. b. Chicago. I asked him if that would be net cash, and in order to understand his proposition thoroughly and to eliminate a telephone call to the Sugarland people, I said: 'Now, that is 24½ cents f. o. b. Chicago, bill of lading attached, and if I can get the sugar shipped tomorrow you will take it?' He said, 'Yes; but let me know this afternoon.' I then called the Imperial Sugar Company, and asked them if they could load a 500-bag car the next day for us; they told me they had a car spotted and were loading a 360-bag car for us that day. Yes; when I communicated with the Imperial Sugar Company people I then called Mr. Foster back; and then when I called back I told Mr. Foster that I got the sugar, and he said, 'Well, you can handle it like you handled the other cars and draw on our customer in Chicago'; and I said, 'Let me see now, who do you want to send it to?' and he either said 'the Chicago Grocery Company' or 'a Chicago grocery company,' 'but,' he said, 'I will write you fully tonight.' We had been shipping those other two cars of sugar—we had shipped these other cars away up in some of the Northern states; I don't remember now just where they went; and those people Mr. Foster instructed us to ship it to would wait till the cars got there to pay for it, so I said, 'Mr. Foster, will this party take it sight draft?' He said, 'Yes, draw on him at sight'; so I expected him to write us a letter of instructions that night, so I went to the office that afternoon and left a note on Mr. Moore's desk, explaining just what I had done with the Early-Foster Company."

Early-Foster Company then wired A. P. Moore's Sons as follows:

"Ship car to Polish Co-operative Grocery Company, Detroit, Michigan. Make draft on them through Michigan Savings Bank. Twenty-four and one-half."

Spell, Naman & Penland, of Waco, for appellant.

Bulloch, Ramey & Storey, of Tyler, for appellee.

LEVY, J. (after stating the facts as above). [1] The appellee relies upon section 24 of article 1830, R. S., to sustain the right to bring the suit in Smith county, claiming that the contract in suit was finally made in Smith county by acceptance of its terms at Tyler by appellee. The section authorizes suits to be brought against private corporations, as is appellant, "in any county in which the cause of action, or a part thereof, arose." The term "cause of action" used in this section, as contrued, consists of the contract and its breach, and the right and the injury thereto. Ry. Co. v. Hill, 63 Tex. 381, 51 Am. Rep. 642; Western Wool Commission Co. v. Hill (Sup.) 20 S. W. 131; Cuero Cotton Oil & Mfg. Co. v. Feeders Supply Co., 203 S. W. 80; Dallas Waste Mills v. Early-Foster Co., 218 S. W. 515. Under these authorities the requirement of the section that "part" of the cause of action must have arisen in the county where the suit is brought is satisfied upon proof that the contract was made in that county.

[2] And a contract is made, under well-established rules of law, at the place where the acceptance of an offer is given. I Elliott on Contracts, § 62; cases cited supra.

[3] The instant contract made over the telephone was an agreement which originated in the form of offer on one side and acceptance on the other. The final contract was a purchase by appellant and a sale by appellee of 500 bags of sugar f. o. b. car Chicago at 24½ cents per pound, the sugar to be loaded

in a car ready for shipment the day next following the day of the contract.

[4] In construing the evidence it is to be borne in mind the rules of law are that the contract is complete only when both parties have agreed to one and the same set of propositions, and this is accomplished when one of the parties submits a proposition to which the other accedes, provided such acceptance neither takes from nor adds to the offer, but accepts it in every respect just as it stands. The acceptance, though, must be an unconditional acceptance of the offer. The rejection of an offer terminates it. It appears from the evidence that the president of appellant company placed himself in connection by means of the telephone system with the manager of appellee company, thereby inviting communication relative to his business. The appellant wanted to buy from appellee "a couple of cars of 500-bag rolling sugar." By "rolling sugar" was meant a car loaded with that amount of sugar ready for immediate transportation and resale. Thus prompt performance was intended. The manager of appellee informed appellant that "the only thing we had for immediate shipment was a 360-bag car, which, according to information, was being loaded in Sugarland that day, and I could sell him that car of sugar, but could not do so until I took the matter up with them (Sugarland)." The appellant, though, "explained that he wanted 500-bag cars." And to this the manager of appellee replied "that it was barely possible that I could get the Sugarland people to load a 500-bag car of sugar immediately, provided they could get an empty car, but I did not know what to do until I took the matter up with them." "Then," the witness says, "the question arose about price," and "he [appellant's president] asked me what would we take for a car." To this inquiry appellee's manager replied that he would take "25, cents f. o. b. Chicago," appellant having previously stated that the shipment was to be "f. o. b. Chicago." Appellant answered "that was too high, that he could not make any money at that price." Obviously it was the intention of appellant to reject the price given by appellee upon the clear ground that it did not give appellant a fair margin of profit in a resale. But the further fact, as testified to by the witness, manifests the intention on the part of appellant to not retire from an agreement as to price, and to fix a price that both parties might agree upon. Appellant then proposed to pay appellee, as the witness said "24½ cents f. o. b. Chicago." This last price, coming from appellant, was clearly intended to be in place of the original price of 25 cents fixed by appellee, and is at least a counter proposal. This counter proposal, in order to constitute an agreement, must be accepted by appellee, and until accepted by appellee the minds of the parties would not meet in mutual agreement of the price payable. And to this proposal to pay "24½ cents f. o. b. Chicago" the appellee inquired if "that would be net cash." Then, as indicating the intention of the parties to create legal relations, it appears that the appellee, with the view to "understand his proposition thoroughly," restated to appellant, "Now, that is 24½ cents f. o. b. Chicago, bill of lading attached, and if I can get the sugar shipped to-morrow you will take it?" Appellant answered, "Yes; but let me know this afternoon." It is evident that the parties have agreed to one and the same set of propositions. The appellant was then, in the evidence, offering to buy from appellee a fixed quantity of sugar, with immediate shipment, at the price of 24½ cents a pound f. o. b. cars at Chicago, and was giving the appellee until "this afternoon" as a specified time in which to accept the proposal. And appellee agreed to give a final answer to the appellant "this afternoon" as to whether it could sell and deliver the 500 bags of sugar for immediate shipment on the next day. The evidence then shows that appellee within the time specified of "this afternoon" did make known to appellant his ability to get the sugar loaded for immediate shipment and of his acceptance of the full terms of the agreement. The legal effect of the evidence is that of a completed contract between the parties. And the conclusion from the evidence is, we think, that the appellant proposed and offered to buy the sugar on the terms fixed by it, and that appellee consented to sell and accepted the offer to buy the sugar on the terms fixed in the offer.

[5] This acceptance occurred in the evidence, in Tyler, Smith county. A part of the cause of action, within the meaning of the article of the statute referred to, then arose in Smith county, and the trial court did not err in so holding, and in overruling the plea of privilege.

The judgment is affirmed.