**LONE STAR GAS COMPANY, Appellant,**

v.

**COASTAL STATES GAS PRODUCING COMPANY, Appellee.**

No. 96.

Court of Civil Appeals of Texas.

Corpus Christi.

March 4, 1965.

Rehearing Denied March 25, 1965.

Roy E. Pitts, J. Harold Goode, Richard B. Williams, Dallas, for appellant.

Frank W. Nesbitt, of Fischer, Wood, Burney & Nesbitt, Corpus Christi, for appellee.

NYE, Justice.

This is a venue case. Coastal States Gas Producing Company brought suit against Lone Star Gas Company in the District Court of Nueces County for damages claimed by reason of an alleged breach of contract to "take or pay" for the minimum quantities of gas provided for in a written gas purchase contract. Lone Star Gas, as buyer, agreed to purchase and receive from Coastal States, as seller, gas at the outlet of certain wells owned and operated by Coastal States in certain designated counties. Lone Star Gas filed its plea of privilege to be sued in the county of its residence, Dallas County. Coastal States controverted Lone Star Gas Company's plea of privilege under Subdivisions 23 and 5 of Article 1995, Vernon's Ann.Tex.Civ.St. The facts were stipulated by both parties. The trial court overruled the plea of privilege. Lone Star Gas perfected its appeal to this Court.

Appellant Lone Star Gas Company's first point complains of the trial court's overruling its plea of privilege under Subdivision 5 of Article 1995, V.A.T.S. Appellee Coastal States abandons its contentions that the venue in this suit can be sustained in Nueces County under Subdivision 5 of Article 1995, V.A.T.S. It contends, however, that venue is proper in Nueces County by virtue of a portion of the statutory exception under Subdivision 23 of Article 1995, V.A.T.S.

The provision relied on by appellee states in effect that suits against a private corporation may be brought in the county in which the cause of action, or part thereof, arose. Appellee plead, and it was later stipulated for the purpose of the hearing on the plea of privilege (and for no other purpose) that Lone Star Gas Company (a private corporation) breached the contract in question with resulting damages. Consequently, within the meaning of Subdivision 23 of Article 1995, V.A.T.S., a cause of action arises in part within the county where the contract is made. Gleason v. Southwestern Sugar and Molasses Co., 214 S.W. 2d 640, Tex.Civ.App.1948 and cases cited therein; for requirements see Appell Petroleum Corp. v. G. W. Townsend Lease Serv., 375 S.W.2d 547, Tex.Civ.App.1964, and Drexler v. Architectural & Commercial Sales, 375 S.W.2d 550, Tex.Civ.App.1964. The sole question before this Court is to determine whether the contract was "made" in Nueces County or whether it was "made" in Dallas County, Texas. If the contract, the subject of this suit, was made in Nueces County, Texas, and subsequently breached, then venue would be proper in Nueces County. If, under these conditions, the contract was made in Dallas County, then the plea was good and the case should be (because the facts were fully developed) reversed and rendered by this Court.

Lone Star Gas Company executed two copies of the gas purchase contract in Dallas, Texas, and enclosed the two copies with a cover letter to Coastal States at Corpus Christi using the United States mail. The cover letter, dated June 19, 1959, together with the two gas contracts, was received by Coastal States in Corpus Christi, Texas. The pertinent portion of the letter, addressed to Coastal States, stated:

" * * * we are enclosing the following:

" * * * (3) Two copies of gas purchase contract dated June 3, 1959. This has been executed on the part of Lone Star Gas Company and is being *sent* to you with the provision that the instrument is void *unless executed by you and returned to us on or before June 30, 1959*. After execution on your part please retain the carbon copy for your files and *send the original to us*.

" * * * *We have enjoyed the negotiations* regarding this transaction and hope that it will be mutually profitable to both of us.

> "Yours very truly,
> "Lone Star Gas Company."

(Emphasis supplied)

Coastal States followed the instructions of the cover letter, executed the contracts, and sent the original to Lone Star Gas by United States mail on June 22, 1959. Appellant stipulates that the contract was timely received.

The appellant contends that "return" and receipt of the fully executed contract was a condition precedent to a final acceptance of the offer and that there was no contract and no acceptance which fulfilled the condition of the offer until the fully executed contract was "returned" and received. If this contention be correct, then the contract would not have been "made" until it was actually received in Dallas as contended by Lone Star Gas.

Appellant argues that the provision of the offer that " * * * the instrument is void unless * * * returned to us on or before June 30, 1959", required delivery of the executed contract to Lone Star Gas as a final act completing the contract. Citing Williston on Contracts, § 88 which states:

"It necessarily follows from the power of the offeror to dictate the conditions of the contract, and the way it may be accepted, that he may require the letter or telegram of acceptance actually to be received before a contract shall be formed * * *. This requirement need not be in express words; it is enough if the offer imposes a condition which cannot be satisfied until the acceptance is received * * *."

The question, then, was there such a condition in the cover letter?

█ It is true that the appellant, as offeror, could dictate the manner and place of acceptance. Western Union Telegraph Co. v. Gardner, 278 S.W. 278, Tex.Civ.App. 1925; Williston on Contracts, § 76; 3 Hilldebrand, Texas Corporations, page 289. However, the cover letter did not specifically require that the contract must have been received in Dallas before the deadline to give it validity or to have come into being. It then becomes apparent to us that the cover letter containing the offer must be considered as a whole in order to give effect to the general purpose and the true intentions of the parties. The court will examine and consider the entire writing, seeking, if possible, to harmonize and give effect to all provisions of the letter so that none will be rendered meaningless. Universal C.I.T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154 (1951). With these rules in mind, let us look at the letter, giving effect to the language contained within the four corners of the instrument.

It is apparent from the letter of transmittal that the parties had been negotiating for some time and had reached the stage of reducing the fruits of their agreements to writing. (Lone Star Gas Company stated in the cover letter * * * "We have enjoyed the negotiations regarding this transaction and hope that it will be mutually profitable to both of us.") The negotiations were over. The parties were in the final stages of consummating the completed contract. Lone Star Gas Company executed the original and one copy of the contract and specified that the contract must be executed by Coastal States. This was done. Another obligation on the part of the appellee, Coastal States, was that the contract must be returned. What does return mean? Of course, it has many meanings and many connotations. Return implies a going back to a starting place; to re-deliver; to send back; a means for re-conveying something to its starting point. We believe that solace

is had in determining the meaning and intention of the offeror-appellant of the term "returned", by looking at the subject letter to ascertain: (1) the method used by the appellant in delivering the contract, and (2) by the instructions appellant gives to appellee for returning the contract. First: Appellant states in the letter that the contract has been executed by Lone Star Gas Company "and is being *sent* to you" (original and one copy was sent to appellee by U. S. mail). This would surely sanction use of the same method of reconveyance as was used by appellant—(the U. S. mail). Appellant required that the contract be "* * * returned to us on or before June 30, 1959." The deadline was met. They do not state that the contract must be received by them on or before June 30, 1959. For instance, does not the term "on or before" imply that Coastal States could return the contract *on* June 30, 1959, as well as *before* June 30th? We think it does.

At another place in the cover letter (paragraph number 2), appellant states that:

"* * * we are enclosing the following:

"* * * (2) One copy of letter agreement dated June 8, 1959, relating to certain gasoline rights. This instrument has been executed by both parties and the copy we are *returning* to you is for your files. We have retained the original for our records."

By *returning* the copy of the letter-agreement relating to certain gasoline rights to appellee, it had left the hands and control of appellant at the time it was mailed in Dallas to Coastal States. Nothing further had to be done relative to gasoline rights. In the subject paragraph number (3), a very similar situation exists, only in reverse. Lone Star Gas is requiring Coastal States to do the same as they did in paragraph number (2), namely, after executing the contract, they were instructed to keep a copy and return the original. The method by which the contract was to be returned

would certainly imply the same as was used by appellant, i. e., the U. S. mail.

It has generally been held in this state that a contract is made at the place where the offer of the contracting party is accepted by the other party. Texas Supply Co. v. Clarke, Tex.Civ.App., 220 S.W. 573; Early-Foster Co. v. A. P. Moore's Sons, Tex.Civ.App., 230 S.W. 787; Cowdin Grocery Co. v. Early-Foster Co., Tex.Civ.App., 237 S.W. 578; Gleason v. Southwestern Sugar and Molasses Co., supra. This acceptance is accomplished at the place where the last act necessary to give it validity is done. Texas Employers' Ins. Ass'n v. Moore, Tex.Civ.App., 56 S.W.2d 652; 17A C.J.S. Contracts § 356, p. 355; Burtis v. Butler Bros., 228 S.W.2d 938, Tex.Civ.App. 1950; Woodman v. Bishop, Tex.Civ.App., 203 S.W.2d 977 (1947).

The agreement becomes obligatory the moment the minds of the parties meet and the acceptance is communicated in a proper manner to the offeror. It is sufficient if the offer is accepted in the mode impliedly required by the offeror. One who makes an offer through a particular channel impliedly authorizes an acceptance through the same channel or agency. Appellee's acceptance was transmitted by the U. S. mail the same as impliedly authorized by the offeror-appellant. The contract became complete as soon as it was put out of the appellee's possession. 17 C.J.S., Contracts § 45, p. 690; 13 Tex.Jur.2d 151, Contract, § 30; Blake v. Hamburg-Bremen Fire Ins. Co., 67 Tex. 160, 2 S.W. 368.

In the early case of Scottish-American Mortg. Co. Limited v. Davis, 96 Tex. 504, 74 S.W. 17, the Supreme Court of Texas stated the well-settled rule:

"The authorities are well-nigh unanimous in asserting that, when a party submits to another, through the mail, a proposition of purchase or sale, the receiver of the proposition has the right within a reasonable time, and before it is withdrawn, to accept by a writing deposited in the post office, duly stamped, ready for carriage and delivery; and such an acceptance binds the proposer of the contract from the time the deposit is made in the post office, whether it be delivered or not." (citing cases).

This rule has never been changed in Texas. See Turner v. Day, 322 S.W.2d 300, Tex.Civ.App.1959, at page 305 (and cases cited therein).

We believe that there was an effective offer "made" at that moment when the same was mailed from Dallas. We hold that there was an effective acceptance at the moment that Coastal returned the contract by mailing it on June 22, 1959. The contract having been finally "made" in Nueces County, Texas, then a part of the cause of action arose in Nueces County, Texas, within the meaning of Subdivision 23 of Article 1995, V.A.T.S. Appellant's points are overruled. The judgment of the trial court is affirmed.

Affirmed.