**Donald DEMPSEY, et ux., Appellants,**

v.

**Pamela E. KING, et al., Appellees.**

**No. 13534.**

Court of Appeals of Texas,
Austin.

Nov. 16, 1983.

Rehearing Denied Jan. 11, 1984.

Kent M. Rider, Joseph & Rider, Austin, for appellants.

C.W. Pearcy, Austin, for appellees.

Before PHILLIPS, C.J., and EARL W. SMITH and BRADY, JJ.

BRADY, Justice.

Appellants, Donald and Janice Dempsey, sued Pamela King for specific performance of a contract for the sale of real estate or alternatively damages or partition of the real estate. After the jury returned the verdict the trial court entered judgment ordering that appellant take nothing against appellee. Appellants argue that the trial court erred: (1) in submitting and entering judgment upon special issues five and six because they were based upon an incorrect theory of the law of delivery of a written contract; (2) in submitting special issue seven because it was unsupported by pleadings; (3) in failing to award appellant's reasonable attorney's fees; (4) in refusing to appoint a receiver to sell the property and partition the proceeds; and (5) in refusing to award appellants damages suffered by appellee's breach of contract.

Appellee argues by crosspoints that the trial court erred (1) in refusing to award appellee her reasonable attorney's fees and (2) in refusing to cancel the March 31, 1980 warranty deed by which Dow King conveyed to the appellants an undivided one-half interest in the home and property involved, because by virtue of the property settlement provision in the Kings' divorce decree Dow King did not own an undivided one-half interest in the property and therefore Dow King had no authority to deed such interest in the land.

During their marriage, Pamela King and her former husband Dow King built a house on approximately three and one-quarter acres of land. Pamela and Dow were divorced on June 15, 1979. Part of their divorce decree incorporated a property settlement agreement which requires Dow to make "reasonable efforts to sell the family residence." Further, the agreement provided that if a sale occurred prior to June 15, 1979, Pamela would receive $35,000 and Dow would receive $15,000 of the first $50,000 received from the sale, and any additional sums received from the sale would be

divided equally between Pamela and Dow. The Kings' property settlement agreement permitted Mrs. King and the couple's minor children to live in and occupy the home until it was sold. No deadline or other provision was incorporated into this agreement which would require Mrs. King and the children to vacate the home. The court granting the divorce approved the agreement and it was incorporated into their final decree of divorce.

The house was originally advertised for sale at a price of $127,000, subject to a lien balance of approximately $47,000. During September of 1979, Dow King met with the Dempseys to discuss the sale of the house. The Dempseys made a written offer to buy the house for $97,000. This offer was signed by the Dempseys and Dow King on September 27, 1979, and carried by him the following day to his ex-spouse, Pamela, who signed all three copies of the contract and gave them back to Dow. On September 29, 1979, Pamela called Dow and notified him of her intention not to go through with the sale. Later that same day, Dow telephoned Janice Dempsey and told her that Pamela had signed the contract. Sometime after September 30, 1979 the Dempseys received a signed copy of the contract. Thereafter, on October 12, 1979, the purchasers and Dow King met at an Austin title company to "close" the sale. Pamela King refused to attend the closing or to execute any instrument of conveyance. On March 31, 1980 Dow King conveyed an undivided one-half interest in the house by warranty deed to the Dempseys. At the time of suit, Pamela and the couple's daughters continued to live in and occupy the home.

The appellants' first point of error complains that the trial court erred in entering judgment based upon the jury's affirmative answers to special issues five and six. Special issue five asks:

Do you find from a preponderance of the evidence that Mrs. Pamela King informed Mr. Dow King III of her intent not to sell the house at 1107 Castleridge after she had signed the written contract of September 29, 1979, but before it was given to Mr. or Mrs. Dempsey?

Special issue six asks:

Do you find from a preponderance of the evidence that either Mr. or Mrs. Dempsey knew of Mrs. Pamela King's intent not to sell the house at 1107 Castleridge after she signed the written contract of September 27, 1979 but before either of them was given the contract?

The ultimate question presented to us is: Can the seller withdraw acceptance of an earnest money contract after signing same before delivery of the instrument to the buyer or buyer's agent? Stated another way, does a communication by the seller to the buyer that she was withdrawing or terminating her acceptance become effective if such communication is received before the contract is delivered? The jury found, and the evidence supports the finding, that Pamela communicated her withdrawal of acceptance to Dow King, the co-seller, and further that the purchasers were informed and knew of Pamela's intent not to proceed with the sale before the signed contracts were delivered to them. Evidence in the record amply supports the findings by the jury and the trial court that all parties were aware of Pamela's withdrawal of acceptance before actual manual or physical "delivery" of the earnest money contracts back to the purchasers.

There exists a line of authority that holds that acceptance of an offer to sell real property must be communicated to the offeror by the offeree. See *American Nat. Ins. Co. v. Warnock*, 114 S.W.2d 1161 (Tex. 1938), which was a suit for breach of contract for refusal of the insurance company to convey the Rooney Hotel in Fort Stockton to E.H. Warnock. Justice Sharp, writing for the Texas Supreme Court, stated the rule as follows:

To form a binding contract, it must appear that the party to whom the offer is made accepts such offer *and communicates such acceptance to the person making the offer* * * * *Id.* at 1164. (emphasis supplied)

17 C.J.S. *Contracts* § 45 at 688 cited the above case and others, and stated the following:

> Acceptance of an offer must, as a rule, be communicated to the offeror or be put in the course of communication by an act for it to effect a contract.

17 Am.Jur.2d *Contracts* § 42 at 380 reads:

> When an express acceptance is required by an offer, the fact of the acceptance must be communicated to the offeror by the offeree or his agent.

14 Tex.Jur.3d *Contracts* § 74 at 119 states:

> As a general rule, the acceptance of an offer by the offeree must be communicated to the offeror * * *

■ Before the offeree, Pamela King, or someone in her behalf, communicated to the purchasers that she had accepted and had executed the earnest money agreement, she communicated the fact of her withdrawal of such acceptance to the other parties to the agreement two days before delivery of the instrument to the purchaser by her former spouse.

Had the acceptance by Pamela been communicated by her to the Kings, as purchasers, before her communication that she intended to withdraw her acceptance, we would have a quite different situation. Or had the contract itself been physically delivered to or reached the buyers or their agent before such withdrawal, the contract would have been formed and the withdrawal would be ineffective.

Since Dow King, the former spouse, was not the agent for the appellant purchasers, a fact conceded by counsel at oral argument and in appellants' brief before this Court, delivery of the signed earnest money agreement to him did not constitute delivery to the purchasers. Thus, the communication to purchasers of her withdrawal of the previous acceptance of the offer was effective to recall such acceptance made before actual delivery. Findings of fact by the trial court, the answers of the jury to the special issues, and all the testimony clearly demonstrate that Pamela King had withdrawn and revoked her acceptance before any delivery of the instrument to the purchasers.

*Cf. Franklin Life Insurance Company v. Winney,* 469 S.W.2d 21 (Tex.Civ.App.1971, writ ref'd n.r.e.), holding that acceptance is not operative until actually received.

This Court has carefully considered the appellant's arguments that the "mailbox" rule applies, stating that the act of appellee in giving the signed contracts back to her former spouse was the equivalent of having placed them in the mail to the purchasers. *Lone Star Gas Co. v. Coastal States Gas Producing Co.,* 388 S.W.2d 251 (Tex.Civ. App.1965, no writ). *Lone Star,* however, deals with a situation in which the person doing the mailing (the offeree) desired the contract to be upheld. Appellant furnished no authority for using a mailbox theory to permit an offeror to uphold a contract against the will of the offeree, nor do we find any. In fact, there is authority that had appellee actually deposited the signed instruments in the mail that Friday afternoon, she could have secured their return before delivery. *See Scottish-American Mortgage Co. v. Davis,* 96 Tex. 504, 74 S.W. 17 (1903). *Lone Star, supra,* also holds that an agreement becomes obligatory "the moment the minds of the parties meet *and the acceptance is communicated in a proper manner to the offeror.*" (emphasis added).

The jury found that to require Mrs. King to convey her interest in the home to the Dempseys would work "an unfairly greater hardship on her than any hardship Mr. and Mrs. Dempsey may experience if they are not allowed to purchase Mrs. Pamela King's interest according to the terms of the September 27, 1979, written contract." The jury also found that Mrs. King's failure to close the sale of this home as per the written earnest money agreement was not a proximate cause of any loss of money paid by the Dempseys in mortgage interest in excess of what they would have paid if the contract of sale had been closed on October 12, 1979. The jury further found the fair market value of the home to be in the sum of $105,000, some $8,000 more than the contract price, and that the house is not capable of partition in kind. From all the jury findings, the trial court concluded that the

Dempseys should take nothing by their original suit and Mrs. King take nothing by her cross-action, thus effectively leaving the parties where they were.

■ The trial court refused to set aside the Dow King deed as a cloud on appellee Pamela's title. This Court finds no authority holding that the refusal would constitute reversible error by the trial court. Courts are without authority to supply the missing terms of a contract which the parties themselves had either not seen fit to place in their agreement, or which they omitted to agree upon. The interest which appellants purchased from Dow King is exactly the same interest Dow King had retained as a result of the divorce settlement agreement. When at such future time appellee elects to sell her homestead, the appellants will be entitled to receive such interests as they have in the property. Our holding will in no way affect whatever right of action appellants may have against Dow King on his warranty of title.

The judgment of the trial court is affirmed.

Affirmed.