INSURANCE CORPORATION
OF AMERICA, Appellant,

v.

Dr. Ross WEBSTER and Donna
Johnson Zabodyn, Appellees.

No. 01–92–01165–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 19, 1995.

Order Overruling Motion for Rehearing
En Banc Aug. 24, 1995.

Dissenting Opinion by Justice
Hutson–Dunn Aug. 24, 1995.

David J. Sacks, Tom Alexander, Houston,
for appellant.

John M. O'Quinn, Ed McAninch, Christian Hill, Houston, for appellees.

Before OLIVER–PARROTT, C.J., and HUTSON–DUNN and HEDGES, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

This is an appeal from a judgment against the appellee, Insurance Corporation of America (ICA), awarding damages to Ross Webster, M.D. for ICA's alleged failure to properly handle and settle a medical malpractice suit brought against him by Donna Johnson Zabodyn. Zabodyn is the assignee of Webster's claims against ICA, his insurer. The jury found ICA grossly negligent and assessed damages at $300,000 in mental anguish and $7.2 million in punitive damages. In the judgment, the trial court awarded to Zabodyn these amounts plus $1,233,371, the amount of the judgment entered against Webster in the underlying medical malpractice action, and prejudgment interest.

## I. Background

### A. The underlying litigation

In 1979, Webster performed stomach reduction surgery on Zabodyn at Pasadena Bayshore Hospital. This surgery consisted of wrapping Zabodyn's stomach in marlex mesh to reduce its capacity. Infection developed, and Zabodyn was transferred to Hermann Hospital. Another doctor removed the marlex and treated the infection successfully. Zabodyn required subsequent surgery and medical treatment for several years.

Zabodyn filed a medical malpractice suit against Webster. Webster had malpractice insurance provided by ICA with limits of $100,000; he also had excess coverage provided by U.S. Fire with limits of $750,000. The terms of the policy required ICA to obtain Webster's consent before it could settle the case. The case went to trial, the jury found that Webster was negligent, and the trial court entered judgment against Webster based on the jury's finding of $1,223,371 in actual damages. Webster appealed the judgment, but it was affirmed. *Webster v. John-son*, 737 S.W.2d 884 (Tex.App.—Houston [1st Dist.] 1987, writ denied).

### B. The parties

To settle Zabodyn's malpractice claim and avoid execution on the judgment, Webster assigned to Zabodyn his causes of action against the malpractice insurance carriers, ICA and U.S. Fire. Webster and Zabodyn then filed suit against ICA and U.S. Fire. They settled with U.S. Fire, which agreed to pay them $300,000 immediately, with an agreement that it would be reimbursed if Webster and Zabodyn recovered from ICA. ICA filed a third party action against U.S. Fire. ICA filed a trial amendment on April 13, 1992 pleading Webster's contributory negligence and the negligence of Webster's insurance agent. On April 20, 1992, during trial, ICA nonsuited its third party action against U.S. Fire, which remained in the suit as an intervenor to collect the $300,000 it had paid to Webster and Zabodyn.

### C. The evidence

The plaintiffs presented the testimony of former insurance adjusters that ICA should have accepted two offers to settle the malpractice case for $100,000. These experts also testified that ICA should have made offers to settle the case. There was also testimony that ICA did not advise Webster of the progress of the case, the chances of a probable excess verdict, and of the settlement offers. The record also reflects that ICA did not seek Webster's consent to settle, handle Zabodyn's claim promptly, or send a letter to Webster notifying him that he had been sued in an amount in excess of his policy limits. There was also testimony that Webster never forwarded a copy of the suit papers to his insurance agent or the excess carrier, realized he was sued in excess of his policy limits, did not inform ICA that he had excess coverage, and wanted to try the case to clear his name.

Zabodyn's first attorney sent Webster's attorney a settlement demand letter dated July 15, 1985 offering to settle the case for the known policy limits of $100,000, if there was no other insurance. The case was set for trial on December 2, 1985. On November

18 or 20, 1985, Webster discussed his excess coverage with his attorney. Webster's lawyer confirmed the existence of the $750,000 in excess coverage by calling Webster's insurance agent. On November 27, 1985, Zabodyn's second attorney sent Webster's attorney a settlement demand letter that offered to settle for $99,999. The letter was "in reliance on" representations that Webster only had $100,000 in coverage. The settlement demand letters were admitted into evidence with testimony by the plaintiff's expert that they were unconditional demands. The letters are attached as an appendix hereto.

### D. The jury charge

The case was submitted to the jury on three theories: negligence, gross negligence, and the commission of unfair practices in the business of insurance. The jury found that before the jury's verdict in December 1985 "ICA's conduct in the handling or settlement of Mrs. Zabodyn's claim against Dr. Webster constitute[d]" negligence, gross negligence, and an unfair practice in the business of insurance. The jury also found that ICA's negligence and gross negligence proximately caused the verdict against Dr. Webster and that the unfair act or practice was a producing cause of the verdict. The jury also found that the unfair practice was done knowingly and before April 1, 1985. Only two damages issues were submitted. One asked the jury to determine the amount that would compensate Dr. Webster for mental anguish, if any, to which the jury responded "$300,000." The other asked the amount, if any, that should be assessed as punitive damages for ICA's gross negligence, to which the jury responded "$7,200,000."

## II. Negligence and gross negligence

In points of error three and four, ICA asserts that the evidence was legally and factually insufficient to support the jury's findings of negligence and gross negligence.

■ In determining whether there is legally sufficient evidence to support the jury's findings, the appellate court must consider only the evidence and reasonable inferences that tend to support such findings and must disregard all evidence and inferences to the contrary; if there is probative evidence which supports the jury's findings, the "no evidence" point of error must be overruled. *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990); *International Bank, N.A. v. Morales*, 736 S.W.2d 622, 624 (Tex. 1987); *Winograd v. Clear Lake City Water Auth.*, 811 S.W.2d 147, 154 (Tex.App.—Houston [1st Dist.] 1991, writ denied). If the evidence offered furnishes some reasonable basis for differing conclusions by reasonable minds as to the existence of the vital fact, it amounts to more than a scintilla of evidence and the "no evidence" challenge fails. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983).

There are two ways an insurer can be negligent. The first arises from the insurer's duty to accept reasonable settlement offers; the second arises from the insurer's duty to exercise ordinary care in investigating the claim, preparing the defense of the lawsuit, and trial of the case.

### A. The insurer's duty under *Stowers*

■ Under the *Stowers* doctrine, A third-party liability insurer must exercise "that degree of care and diligence which an ordinarily prudent person would exercise in the management of his own business" in responding to settlement demands within policy limits. *G.A. Stowers Furniture Co. v. American Indemnitee Co.*, 15 S.W.2d 544, 547 (Tex.Comm'n App.1929, holding approved); *American Physicians Ins. Exchange v. Garcia*, 876 S.W.2d 842, 848 (Tex. 1994). In a *Stowers* case, evidence concerning claims investigation, trial defense, and conduct during settlement negotiations is subsidiary to the ultimate issue of whether the claimant's demand was reasonable under the circumstances, such that an ordinarily prudent insurer would accept it. *Garcia*, 876 S.W.2d at 851. The duty under *Stowers* does not require an insurer to make or solicit offers to settle third-party insurance claims. *Id.* at 851.

### 1. Unconditional offer under *Stowers*

■ ICA contends that before it had a duty to settle the case, Zabodyn and Webster

had to make an unconditional offer to settle the case, but did not. To impose liability under *Stowers*, a settlement demand must propose to release the insured in full in exchange for a stated sum of money or the limits of the policy. *Garcia*, 876 S.W.2d at 848–49. Further, the duty under *Stowers* is not activated unless 1) the claim against the insured is within the scope of coverage, 2) the demand is within policy limits, and 3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment. *Id.* at 849. "[T]he *Stowers* remedy of shifting the risk of an excess judgment onto the insurer is inappropriate absent proof that the insurer was presented with a reasonable opportunity to prevent the excess judgment by settling within the applicable policy limits." *Id.*

In *Jones v. Highway Ins. Underwriters*, 253 S.W.2d 1018 (Tex.Civ.App.—Galveston 1952, writ ref'd n.r.e.) this Court dealt with the issue of whether *Stowers* requires an unconditional offer to settle. Morris Johnson was killed in an automobile accident involving Jones. Jones had liability insurance with limits of $25,000. Johnson's wife and child sued Jones. Anchor Casualty Company, a workers compensation carrier that had paid benefits of approximately $13,000 because of Morris' death, intervened and sought reimbursement of these payments from any recovery the wife received. The wife offered to settle the case for $15,000 conditioned upon the wife and son receiving $7500. Anchor was entitled to be fully repaid the $13,000. The record contained evidence that a subrogated carrier customarily took 50 percent of what it had paid in order to settle a case. There was no evidence that Anchor had agreed to settle according to customary practice. Jones' insurer rejected the offer, the case went to trial, and, based on the jury's findings, judgment was rendered against Jones for $53,533.62.

Jones sued his insurer for negligently failing to accept the wife's offer. The jury found that a settlement offer had been made to Jones' insurer, but the trial court determined that the evidence supported only a finding that a conditional offer was made. This Court concluded that under the *Stowers* doctrine, "such an offer is not sufficient." *Jones*, 253 S.W.2d at 1022.

In *Danner v. Iowa Mut. Ins. Co.*, 340 F.2d 427 (5th Cir.1964), the court interpreted *Jones* to require an unconditional offer:

> Since the decision in the *Stowers* case, the Texas courts have placed a reasonable saving clause on the duty of the insurance carrier to an insured. There must be an *unconditional* offer to settle before there can be said to be a breach of the insurer's duty.

*Id.* at 429. The court further concluded that *Stowers* "does not require the insurer to accept a conditional offer carrying risks of further liability." *Id.* at 430. Thus, before ICA had a duty to settle the underlying litigation, Zabodyn was required to make an unconditional offer.

### 2. Whether the offer was conditional

We must next determine whether Zabodyn's offers to settle were unconditional.

The relevant portion of the first offer sent to Webster's attorney by Zabodyn's first attorney reads

> You have now informed us that Webster has only $100,000.00 in insurance. Based upon your representation, Donna Johnson has authorized me to offer to settle her case against Webster for $100,000.00. Obviously, if there is other insurance, this offer shall be null and void.

The relevant portion of the second offer sent by Zabodyn's second attorney reads

> You and your client, Dr. Ross Webster, have represented in Answers to Interrogatories that the liability insurance coverage on Dr. Webster is only $100,000.00. In reliance upon your representations to that effect, I, on behalf of Donna K. Johnson, the Plaintiff, hereby offer to settle the case with Dr. Webster for the sum and amount of $99,999.00.

■ The construction of an unambiguous writing is a question of law. *Westwind Expl., Inc. v. Homestate Sav. Ass'n*, 696 S.W.2d 378, 381 (Tex.1985); *Block 316 Garage Ltd. v. Wortham & Van Liew*, 705

S.W.2d 249, 251 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *see Lone Star Gas Co. v. Coastal States Gas Producing Co.*, 388 S.W.2d 251, 253–54 (Tex.Civ.App.—Corpus Christi 1965, no writ) (in construing offer to determine whether it was conditional, the court applied rules of contract construction and treated the issue as a question of law). "A condition precedent is a fact which must exist before a duty of immediate performance of a promise arises." *Block 316 Garage*, 705 S.W.2d at 251. A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement. *Dillon v. Lintz*, 582 S.W.2d 394, 395 (Tex.1979) (quoting *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1 (Tex.1976)); *Block 316 Garage*, 705 S.W.2d at 251. If the parties have agreed that the contract will not be effective or binding until certain conditions occur, no binding contract will arise until the conditions specified have occurred. *Parkview General Hosp., Inc. v. Eppes*, 447 S.W.2d 487, 490–91 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n.r.e.).

■ We conclude that both of the offers are unambiguous. Both of the offers to settle were conditioned on the existence of the same fact—Webster not having any other insurance that could be used to compensate Zabodyn. The first quoted letter was made conditional by the clause that reads "if there is other insurance, this offer shall be null and void." *See Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex.1990) ("In order to make performance specifically conditional, a term such as 'if', 'provided that', 'on condition that', or some similar phrase of conditional language must normally be included."). The second quoted letter contains the words "in reliance on," which is a similar phrase of conditional language. Read as a whole, the letter is conditioned on the accuracy of Webster's lawyer's and Webster's representations that no excess insurance coverage existed.[1]

The absence of additional insurance was a fact that had to exist before ICA could accept the offer and form a contract to settle the case. The condition was not limited to insurance that the parties knew about; on the contrary, the plain intent of Zabodyn's attorneys was to avoid a binding contract to settle the case for $100,000 if other insurance existed, but was not known or disclosed. Because other insurance was in existence even before the offers were made, it was impossible for ICA to accept them. *See Gilbert v. Pettiette*, 838 S.W.2d 890, 893 (Tex.App.—Houston [1st Dist.] 1992, no writ) (acceptance must be identical with the offer to make a binding contract). Not only was other insurance in existence, but Webster's own testimony reveals that Webster's lawyer was informed of the excess coverage at least seven days before the November 27 demand.

ICA never had a reasonable opportunity to accept the only settlement offers made by Zabodyn's attorneys; therefore, they cannot be held negligent or grossly negligent under the *Stowers* doctrine.

We sustain those portions of points of error three and four challenging the legal sufficiency of the evidence that relate to ICA's alleged failure to settle.

The discussion of the remaining issues and points of error does meet the criteria for publication, Tex.R.App.P. 90, and is ordered not published.

We reverse and render a take-nothing judgment on the causes of action based on settlement. We remand the causes of action based on ICA's handling of the claim for a new trial.

HUTSON–DUNN, J., dissents in part and concurs in part.

---

1. Zabodyn and Webster introduced testimony that the offers to settle were not conditional. As we stated above, the construction of the offers was a matter of law. " 'Matters of law are not proper subjects for expert opinion.' " *Schauer v. Memorial Care Sys.*, 856 S.W.2d 437, 451 (Tex. App.—Houston [1st Dist.] 1993, no writ). Thus, this testimony is irrelevant to this issue.

APPENDIX

O'QUINN & HAGANS

ATTORNEYS AT LAW
3200 TEXAS COMMERCE TOWER
HOUSTON, TEXAS 77002
(713) 223–1000

MICHAEL D. SYDOW

July 15, 1985

CERTIFIED MAIL # P082773549
RETURN RECEIPT REQUESTED
Mr. John C. Marshall
Ryan & Marshall
1300 Post Oak, Suite 600
Houston, Texas 77056

Re: Donna Kay Johnson v. Ross Webster, et al.

Dear John:

We have now taken the deposition of the Plaintiff, our expert, and all of the experts you listed in response to interrogatories. The case is set for trial in November. I believe you and ICA have sufficient information to evaluate the case.

The liability of Dr. Webster is clear. He failed to comply with the procedures recommended by your own expert. He exercised poor judgment in performing this surgery on my client and he thereafter utterly failed in follow-up care.

You see that Donna has incurred in excess of $100,000.00 in medical expenses alone. She has recently undergone yet another surgery to correct the problems resulting from complications from Webster's surgery.

You have now informed us that Webster has only $100,000.00 in insurance. Based upon your representation, Donna Johnson has authorized me to offer to settle her case against Webster for $100,000.00. Obviously, if there is other insurance, this offer shall be null and void.

Please let us have your reply within 30 days from the date of this letter.

Yours very truly,

/s/ Michael D. Sydow
Michael D. Sydow

MDS:tlc
4/f
cc: Ms. Donna Johnson

Offices of Benton Musslewhite

*Counselors at Law*

609 Fannin
Suite 517
Houston, Texas 77002
November 27, 1985

John Marshall
Suite 1240
2100 West Loop S.
Houston, Texas 77027

Re: Donna K. Johnson v.
Pasadena Bayshore Hospital and
Dr. Ross Webster
Cause No. 80–50444

Dear John:

You and your client, Dr. Ross Webster, have represented in Answers to Interrogatories that the liability insurance coverage on Dr. Webster is only $100,000.00. In reliance upon your representations to that effect, I, on behalf of Donna K. Johnson, the Plaintiff, hereby offer to settle the case with Dr. Webster for the sum and amount of $99,999.00. In making this offer, we are invoking *Stowers* doctrine and hereby request that you directly give Dr. Webster a copy of this letter, so that he may be personally aware of this offer and if he so chooses, demand that this settlement offer be accepted and, failing that on the part of your client, the insurance carrier, to perhaps select his own personal Counsel to protect his interests vis-a-vis his rights under the liability insurance policy.

This offer is made with respect to our claims against Dr. Webster solely and if the settlement offer is accepted, we will reserve all rights to continue our lawsuit against Pasadena Bayshore Hospital.

We will keep this offer open for a reasonable time, at least up until the commencement of jury selection on Monday, December

2, 1985. In conclusion, please be advised that if your client, the insurance carrier for Dr. Webster refuses to accept our offer of settlement within the policy limits, and should we obtain a judgment in excess of the policy limits against Dr. Webster and, because the facts of this case are so strong, we will contend that such failure to settle was negligence, and seek, under *Stowers*, the full amount of the judgment against your client, including the amount in excess of the policy limits.

Sincerely,

/s/ Benton Musslewhite
Benton Musslewhite

BM/sh

HUTSON–DUNN, Justice, dissenting.

I withdraw my previous dissenting opinion and substitute this one.

I dissent. The majority holds that ICA cannot be held negligent or grossly negligent under the *Stowers* doctrine because it did not receive an unconditional offer from Donna Zabodyn's attorneys. In my view, the November 27, 1985, letter from Benton Musslewhite to John Marshall constituted an unconditional offer to settle Zabodyn's case within the policy limits. In light of the facts of this case, I would hold that ICA breached its *Stowers*[1] duty by not accepting the November 27 offer.

## I. Was there an unconditional offer?

The record shows that Zabodyn's attorneys made two settlement offers in this case.

### A. The first offer

On July 15, 1985, Michael Sydow wrote a letter to John Marshall that stated:

You have now informed us that Webster has only $100,000.00 in insurance. Based upon your representation, Donna Johnson has authorized me to offer to settle her case against Webster for $100,000.00 Obviously, if there is other insurance, this offer shall be null and void.

1. *See G.A. Stowers Furniture Co. v. American Indem. Co.,* 15 S.W.2d 544 (Tex.Comm'n App.1929,

I agree with the majority that this was a conditional offer that ICA had no duty to accept.

### B. The second offer

On November 27, 1985, Benton Musslewhite wrote a letter to Marshall that stated:

Dear John:

You and your client, Dr. Ross Webster, have represented in Answers to Interrogatories that the liability insurance coverage on Dr. Webster is only $100,000.00. *In reliance upon your representations to that effect, I, on behalf of Donna K. Johnson, the Plaintiff, hereby offer to settle the case with Dr. Webster for the sum and amount of $99,999.00. In making this offer, we are invoking [the] Stowers doctrine and hereby request that you directly give Dr. Webster a copy of this letter, so that he may be personally aware of this offer and if he so chooses, demand that this settlement offer be accepted. . . .* We will keep this offer open for a reasonable time, at least up until the commencement of jury selection on Monday, December 2, 1985.

(Emphasis added). I disagree with the majority that this was a conditional offer to settle.

### C. Analysis

To determine whether a condition exists, we look at the intention of the parties as expressed in the language of the contract. *Criswell v. European Crossroads Shopping Ctr., Ltd.,* 792 S.W.2d 945, 948 (Tex.1990). To make *performance* of a contract specifically conditional, a term such as "if", "provided that", "on condition that", or some similar phrase of conditional language is normally included. *Id.* This same rule applies to make an *offer* conditional because a condition precedent may relate to either the formation of a contract or an obligation to perform an existing agreement. *See Hohenberg Bros. Co. v. George E. Gibbons & Co.,* 537 S.W.2d 1, 3 (Tex.1976). The November 27 letter contains no such conditional language.

holding approved).

In the absence of conditional language, whether a contractual provision is a condition must be gathered from the intent of the parties as otherwise expressed in the body of the contract. *See id.* However, if the intent of the parties is doubtful, the agreement will be interpreted as creating a promise rather than a condition. *Criswell,* 792 S.W.2d at 948; *Hohenberg,* 537 S.W.2d at 3. When construing a contract, forfeiture by a condition precedent is to be avoided when another plausible reading of the contract is possible. *Criswell,* 792 S.W.2d at 948.

The November 27 offer stated that Musslewhite offered to settle the case based upon Dr. Webster's representations; it did not indicate that the nonexistence of other insurance was a condition precedent to the validity of Musslewhite's offer or the formation of a settlement contract. The formation of an executory contract necessarily requires each party to the contract to make a promise based upon the other party's representations.[2] *See Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 496 (Tex.1991) (consideration consists of detriment that induces the making of a promise, and promise that induces the incurring of a detriment). Further, Musslewhite stated in the November 27 letter that the offer was intended to invoke the *Stowers* doctrine. Although Musslewhite could not invoke a *Stowers* duty from ICA to Dr. Webster without Dr. Webster's request that the offer be accepted, this language is additional evidence that the November 27 offer was unconditional.

I realize that, in certain cases, the wording of an unambiguous contract may be considered in light of the circumstances surrounding the execution of the contract. *Sun Oil Co. (Del.) v. Madeley,* 626 S.W.2d 726, 731 (Tex.1981); *Wadsworth Properties v. ITT Employment and Training Sys., Inc.,* 816 S.W.2d 819, 823 (Tex.App.—Houston [1st Dist.] 1991, writ denied). However, in my view, the surrounding circumstances clearly

show that the November 27 letter was an unconditional offer to enter a settlement contract. Although the July 15 offer was expressly conditioned on the nonexistence of other insurance, it was written over four months earlier by a different attorney from a different law firm. I would hold that the terms of the July 15 offer are irrelevant with regard to the November 27 offer, and the November 27 offer was an unconditional offer.

## II. Did the unconditional offer invoke the *Stowers* duty to settle?

As noted by the majority, liability does not exist under *Stowers* unless: (1) the claim against the insured is within the scope of coverage; (2) the demand is within policy limits; and (3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment. *American Physicians Ins. Exch. v. Garcia,* 876 S.W.2d 842, 848 (Tex.1994). The first two elements of the *Stowers* duty are clearly satisfied in this case. Further, the evidence in this case is sufficient to support the jury's finding that ICA breached its *Stowers* duty to Dr. Webster by not accepting the November 27 offer.

The evidence during the trial of this case showed that the defense witnesses who testified on Dr. Webster's behalf in the underlying lawsuit gave less than ringing endorsements of Dr. Webster's conduct during the discovery phase of the case. Further, the evidence showed that ICA knew that Zabodyn had sustained damages far in excess of Dr. Webster's policy limits. As noted by the majority, there was testimony that ICA did not advise Dr. Webster of the progress of the case, the chances of an excess verdict, the probable amount of an excess verdict, and of the settlement offers. The record shows that ICA did not seek Dr. Webster's consent to

2. Had ICA accepted the November 27 offer and Musslewhite later learned about Webster's other insurance, I believe that Zabodyn's only remedy would be to pursue a claim for fraudulent inducement and rescission of the settlement contract. *See DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 688 (Tex.1990), *cert. denied,* 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991)

(elements of fraudulent inducement action); *Dallas Farm Mach. Co. v. Reaves,* 158 Tex. 1, 307 S.W.2d 233, 238–39 (1957) (remedies for fraudulent inducement action); *Burroughs Corp. v. Farmers Dairies,* 538 S.W.2d 809, 810 (Tex.Civ. App.—El Paso 1976, writ ref'd n.r.e.). I do not address whether Zabodyn could have proven such a claim.

settle, nor did it notify him of its desire to try the case.

The evidence showed that Dr. Webster learned about the settlement offers on December 2, 1995, the date jury selection was scheduled to begin. The trial court continued the case until December 4. Dr. Webster wrote Hallmark on December 3 and demanded that ICA accept Musslewhite's November 27 offer to settle the case. Hallmark testified that he read Dr. Webster's letter the day before trial, and he called Marshall in response to the letter. Although Marshall said that Dr. Webster did not want to settle the case, Hallmark did not call Dr. Webster to verify Marshall's statements despite evidence that Marshall was personally interested in trying the case. The testimony showed that ICA's claim file for the case contained a letter from Marshall to Hallmark, written almost a year before trial but after ICA had already increased its reserves to the policy limits. In this letter, Marshall stated that he earned his money trying cases, and he enjoyed trying malpractice cases.

I would find the evidence legally and factually sufficient to support the jury's finding that ICA acted negligently in settling Zabodyn's claim against Dr. Webster. I would additionally address whether the evidence was sufficient to support the jury's finding of gross negligence in light of *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 19–23 (Tex.1994).

## ORDER

PER CURIAM.

The appellees' motion for rehearing en banc is overruled.

OLIVER–PARROTT, C.J., and COHEN, WILSON, HEDGES, ANDELL and TAFT, JJ., voted against rehearing the case en banc.

HUTSON–DUNN, J., dissents from the refusal to rehear the case en banc.

O'CONNOR, J., dissents from the refusal to rehear the case en banc for the reasons stated in HUTSON–DUNN's, J., dissenting opinion.

MIRABAL, J., filed an opinion dissenting from the refusal to hear the case en banc.

MIRABAL, Justice, dissenting.

I dissent from the overruling of the motion for rehearing en banc.

The attorney for the defendant doctor also had the insurance company as a client, and therefore acted as the insurance company's agent in this litigation. The insurance company, through its attorney/agent, was aware of the $750,000 in excess coverage and failed to reveal it to the plaintiff, even though the discovery rules required disclosure. When the attorney/agent received the plaintiff's offer to settle within the "known" policy limits, the insurance company did not accept the offer.[1]

According to the majority opinion, an insurance company can be a party to fraud by failing to disclose the full amount of insurance coverage to the plaintiff, and then when the plaintiff offers to settle within the misrepresented policy limits based on the understanding no other insurance coverage applies, the insurance company can claim the plaintiff only made a "conditional" offer that was impossible to accept. This cannot be the law.

Here, the plaintiff basically made the following offer: "Based on what you told me, I offer to settle for $99,999.00." The majority holds this was a "conditional" offer because the plaintiff was relying on what the insurance company's agent had told her. I would hold that a plaintiff has an absolute right to rely on sworn responses to discovery, and such reliance does not transform an otherwise unconditional offer into a "conditional" offer.[2]

I note that I have doubts about whether this "conditional" vs. "unconditional" analysis is controlling in any event. The Texas Su-

---

1. At least the attorney/agent did not perpetuate the fraud upon the plaintiff by having his client settle for $100,000 as though there was no other coverage.

2. Of course, if the insurance company was *not* aware of the $750,000 in excess coverage, then the plaintiff's offer, from the insurance company's perspective, was clearly an "unconditional" offer.

preme Court has indicated that the question of whether an offer of settlement is an "unconditional" offer in a *Stowers* case is merely evidentiary, not controlling. *Ranger County Mut. Ins. Co. v. Guin,* 723 S.W.2d 656, 660 (Tex.1987).